Harry HUGE, C. W. Davis and Paul R. Dean, as Trustees of the United Mine Workers of America Health and Retirement Funds, Plaintiffs,

v.

LONG'S HAULING COMPANY, INC., a corporation, Defendant.

Civ. A. No. 77–269.

United States District Court,
W. D. Pennsylvania.

Nov. 8, 1977.

Jack Plowman, Plowman & Spiegel, Pittsburgh, Pa., for plaintiffs.

John J. McLean, Jr., Robert A. King, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendant.

## MEMORANDUM

McCUNE, District Judge.

Plaintiffs, Trustees of the United Mine Workers of America Health and Retirement Funds (Trustees) seek a preliminary injunction enjoining defendant, Long's Hauling Company (Long's), from violating the terms of the National Bituminous Coal Wage Agreement of 1974 (National Agreement). Under the terms of the National Agreement, which the Trustees seek to enforce, employers who have become bound by the National Agreement are required to make designated payments and reports to the Trustees. The Trustees are third party beneficiaries to the National Agreement.

Long's opposes the Trustees' motion, arguing that the National Agreement is unenforceable due to alleged violations by the United Mine Workers of America (UMW) of §§ 8(d) and 8(e) of the National Labor Relations Act (NLRA) and alleged violation of § 1 of the Sherman Antitrust Act by the UMW and the Trustees. We find that even assuming the truth of the facts underlying these allegations, they are not, as a matter of law, defenses to recovery by the Trustees.

Long's is a corporation engaged in a trucking operation in and about Allegheny County, Pennsylvania, with principal offices in Duquesne, Pennsylvania. Long's employees are, and have been since 1962, represented in collective bargaining by the UMW, and United Mine Workers of America, District 5 (District 5). During the period in which Long's employees have been represented by the UMW, Long's and District 5 have negotiated several collective bargaining agreements. Consistently, these agreements have been based on the National Agreement, but have contained a clause rendering, *inter alia,* the "Welfare Retirement Clause" of the National Agreement inapplicable. A supplemental agreement was negotiated, and health and pension benefits were arranged through a private pension fund other than the United Mine Workers of America Health and Retirement Fund. This practice continued until 1975, when Long's signed the 1974 National Agreement without supplement. The circumstances of this signing constitute the substance of Long's defense.

In January of 1975, while hauling coal for Barnes and Tucker Coal Company, Long's employees were stopped by representatives of the UMW. The UMW representatives informed Long's employees that they could not continue hauling coal from that company until Long's signed the National Agreement.[1] Upon communication by Long's of this ultimatum to District 5, Long's was again told to sign the National Agreement. At no time were the termination requirements of the current collective bargaining agreement between Long's and District 5 complied with by the UMW or District 5. Due to the intransigence of the UMW and the weight of economic pressure, Long's signed the National Agreement without supplement. No unfair labor practice charge was filed at that time or thereafter by Long's. Long's merely ignored the National Agreement, continuing to follow the provisions of the supplemented local agreement, making payments not to the Trustees, but to the pension fund established by the local agreement.

The National Agreement was signed by Long's on February 4, 1975. The National

---

1. The National Agreement, of which Barnes and Tucker is signatory, contains a clause prohibiting contracting out work to a contractor who is not a signatory of the National Agreement. The UMW representatives were allegedly enforcing this provision.

Agreement was apparently ignored by everyone until this action was filed by the Trustees on March 14, 1977, over two years later.

Long's raises three defenses to the Trustees' motion for a preliminary injunction. They assert that the methods used by the UMW constitute a violation of § 8(d) of the National Labor Relations Act (NLRA); that the force exerted upon them was due to a "hot cargo" clause in violation of § 8(e) of the NLRA; and that the UMW joined with the Bituminous Coal Operator's Association to force operators such as Long's into signing the National Agreement, constituting a violation of § 1 of the Sherman Antitrust Act. A fourth defense, that of noncompliance by the UMW and District 5 with the termination provision of the former collective bargaining agreement, was raised in Long's response but was not briefed. This fourth argument is, however, without merit, since Long's has clearly waived these provisions by waiting over two years to assert them.

■ We do not reach the merits of Long's argument with respect to NLRA violations. We do not, in an action commencing in this court, have jurisdiction over unfair labor practice charges. Any conduct which is even arguably a § 8 violation must first be brought before the National Labor Relations Board (NLRB) before it can be asserted here. *San Diego Building Trades Council, etc. v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Furthermore, even if we had jurisdiction, we could not consider these defenses. Because they are asserted over six months after their occurrence, they are barred by § 10(b) of the NLRA. *Local Lodge No. 1424 v. N.L.R.B.*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960). Long's has not cited, nor are we aware of, any cases which allow defensive use of an unfair labor practice not brought before the NLRB and not brought within six months of its occurrence.

■ Long's additionally contends that the collective bargaining agreement upon which the Trustees assert their claim was brought about as a result of a violation of § 1 of the Sherman Act. We cannot reach the merits of this defense either, for the Trustees are not parties against whom this defense can be raised.

We are bound by the decision of *Lewis v. Seanor Coal Company*, 382 F.2d 437 (3d Cir. 1967). *Seanor* presents a factual setting strikingly similar to that which is before us in this action. Seanor Coal, a small coal operator, attempted to invoke the Sherman Act as a defense to a suit for royalty payments brought by trustees of a Taft-Hartley pension fund. Although Seanor was, in the context of a summary judgment motion, an innocent party, the Circuit determined the antitrust defense to be barred under *Kelly v. Kosuga*, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959). The Circuit interpreted *Kosuga* to allow defensive use of an antitrust violation only when "the contract price has been inflated because of unlawful price fixing . . ." Because that violation was not present in *Seanor*, the Trustees prevailed.

Like *Seanor*, where the permissible antitrust defense was not present, it is not present here. Although *Kosuga* suggests that the antitrust defense can be used by any innocent party harmed by an agreement, *Seanor* cannot be so read. Seanor Coal was an innocent party. Seanor was harmed by alleged antitrust violations. Despite these facts, the trustees prevailed in *Seanor*. Because the Circuit interprets strictly the permissible antitrust defense, the Trustees must also prevail here. Only in an instance where there is an actual price inflation in the contract being sued upon, due to price fixing, could the result be otherwise.

■ Since there is a strong probability of success on the merits of plaintiffs' claims in this action, and since irreparable harm would result from failure to grant this motion, the Trustees' motion for preliminary injunction will be granted. See *Huge v. Old Home Manor, Inc.*, 419 F.Supp. 1019 (D.C.Pa.1976).

In granting plaintiffs motion for preliminary injunction, it must be emphasized that

we are in no way compromising defendant's counterclaim affirmatively asserting alleged antitrust violations on the part of plaintiffs or others not presently parties to this action.

### ORDER

AND NOW, November 8, 1977, it is ordered that defendant, Long's Hauling Company, Inc., is directed from this date forward to comply with the terms of the National Bituminous Coal Wage Agreement of 1974, with respect to royalties there required in favor of the United Mine Workers of America Health and Retirement Trusts.

It is further ordered that defendant is directed to comply with those provisions of the National Bituminous Coal Wage Agreement which require the furnishing of monthly reports to plaintiffs, Trustees of the United Mine Workers of America Health and Retirement Trusts from this date forward.

It is further ordered that defendant Long's Hauling Company, Inc., make available to plaintiffs all records pertaining to hours worked by defendant's employees necessary to determine and verify the amounts paid and/or due and owing to the United Mine Workers of America Health and Retirement Trusts, but only such records pertaining to the period February 4, 1975, to this date.

It is further ordered that the defendant refrain from disposing of assets other than for a fair and adequate consideration and in the ordinary course of business until the final determination of this action or until otherwise ordered.

It is further ordered that plaintiffs give security in the form of a corporate surety bond in the amount of $10,000.00, for payment of such costs or damages as may be incurred or suffered by defendant, in the event it hereafter be determined that defendant was wrongfully enjoined or restrained.