**CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and John E. Dwyer, Plaintiffs,**

v.

**HITCHINGS TRUCKING, INC., a Michigan corporation, and Fred Hitchings, jointly and severally, Defendants.**

Civ. A. No. 7–71951.

United States District Court,
E. D. Michigan, S. D.

July 20, 1979.

Russell N. Luplow, Bloomfield Hills, Mich., Robert J. Lenihan, II, Birmingham, Mich., for plaintiffs.

Lewis R. Thumm, Canyock & Thumm, Utica, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Counsel suggests that this case involves the actuarial solvency of union pension plans. It involves the question of whether there is an obligation on the part of an employer to continue to pay into a union pension fund in accordance with the terms of a collective bargaining agreement after that agreement has expired and before another agreement is negotiated.

The defendant and Teamsters Local 339 entered into a collective bargaining agreement to be bound by the provisions of a master collective bargaining agreement negotiated between the Labor Relations Division of the Michigan Road Builders Association and the Michigan Teamsters Conference, Joint Council 43. This master agreement was effective June 1, 1974 and expired June 1, 1977. The defendant is a small independent aggregate hauler employing only a few employees.

The master collective bargaining agreement between the Michigan Road Builders Association and Joint Council 43 contains a provision relating to pension funds in the following language:

### ARTICLE XII

Health and Welfare and Pension

\*　　\*　　\*　　\*　　\*　　\*

(b) The Contractor agrees to pay into the Central States Southeast and Southwest Areas Pension Fund the weekly contribution shown below for each regularly employed Company Driver and each regularly employed Owner-Operator:

\*　　\*　　\*　　\*　　\*　　\*

At the same time the defendant signed a participation agreement whereby he agreed to participate in the "Central States Southeast and Southwest Areas Pension Fund." The participation agreement contained the following language:

1. The Union and the Employer agree to be bound by, and hereby assent to, all of the terms of the Trust Agreement creating said CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND . . . ..

\*　　\*　　\*　　\*　　\*　　\*

7. This Participation Agreement shall continue in full force and effect during the life of the current collective bargain-

ing agreement between the parties and during all renewals and extensions thereof . . ..

The trust agreement referred to in the participation agreement contains the following language:

## ARTICLE III

### Contributions and Collections

Sec. 1. Amount of Contributions— Each Employer shall make continuing and prompt payments to the Trust Fund as required by the applicable collective bargaining agreement between the parties. The obligation to make such contributions shall continue during periods when the collective bargaining agreement is being negotiated, but such contributions shall not be required in case of strike after contract termination unless the parties mutually agree otherwise.

Finally, the collective bargaining agreement itself contains a provision relating to its termination:

## ARTICLE XXV

### Termination

This Agreement shall remain in full force and effect until June 1, 1977, and thereafter shall continue in force from year to year, unless either party hereto shall notify the other party in writing at least sixty (60) days prior to the end of the current term, or as the case may be, sixty (60) days prior to the end of any additional contract year, of its intention to make changes in or terminate this Agreement. Such written notice shall specify any changes or amendments desired by the party giving such notice and shall be sent by registered or certified mail to the other party.

The facts show that the defendant failed to make payments from June 1, 1977, the expiration date of the old agreement, to April 1, 1978, when a new collective bargaining agreement was signed. The new agreement was an agreement to be bound by a different master contract. At the same time the new contract was signed, a new participation agreement was signed indicating that the effective date of the new participation agreement would be April 1, 1978. The new agreement contained the same terms as did the old one, except providing for a higher rate of contribution.

On February 1, 1977, Teamsters Local 339 forwarded to the defendant what is called a sixty day notice letter to comply with Article XXV of the master contract. It contained the following statements:

This is to advise you that Teamsters Local 339 . . . desires to continue its existing agreement, but also desires to negotiate changes or revisions in such agreement. The particular contract provisions concerning which we desire to negotiate are the clauses relating to HOURS, WAGES, and WORKING CONDITIONS and any other subject matter that might be considered a subject for negotiation.

We shall be pleased to meet with you at any reasonable time convenient to you.

The defendant did not respond and ceased making contributions to the pension fund as of June 1, 1977. The defendant, however, continued to check off dues of the employees in accordance with Article II(g) of the expired collective bargaining agreement and continued to make payments to the Teamsters health and welfare funds provided for in the same article as in the provisions for funding the pension fund, Article XII.

The next contact between the union and the employer occurred June 27, 1977, when the union sent to the defendant a new Michigan Conference of Teamsters Welfare Fund Contribution agreement, a new Pension Participation agreement, and a new Michigan Road Builders Memorandum of Understanding requesting signatures. The defendant did not respond; however, he continued to check off dues and to make payments to the welfare fund on behalf of his employees.

This action is to recover on behalf of the pension fund the amounts they contend are due at the rate defined in the first partici-

pation agreement from June 1, 1977 to April 1, 1978.

The plaintiff contends that the defendant is liable to it on two theories:

1. The obligation to make contributions to the pension fund, which obligation is a part of a collective bargaining agreement, survives the expiration date of that agreement.

2. The defendant is estopped from asserting that the collective bargaining agreement was terminated because of his acts and conduct inconsistent with such an assertion.

3. The Employee Retirement Income Security Act of 1974 suggests reasons why payments should continue.

The participation agreement provides that the employer will be bound by the terms of the trust agreement. It in turn obligates the employer to continue making payments to the trust fund as provided in the collective bargaining agreement and during the periods when a collective bargaining agreement is being negotiated.

The participation agreement also provides that it shall continue in effect during the life of the collective bargaining agreement and renewals and extensions thereof.

Finally, the collective bargaining agreement is to remain in effect until June 1, 1977 and thereafter from year to year unless a sixty day letter indicating intention to change or terminate the agreement has been sent.

These provisions must be considered against the background of the law developed in the labor relations area.

■ It is an unfair labor practice to make unilateral changes in a contract as to matters that are the subject of mandatory bargaining while an agreement is being negotiated. *National Labor Relations Board v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). Pension rights are mandatory subjects of bargaining. *Inland Steel Co. v. National Labor Relations Board*, 170 F.2d 274 (7th Cir. 1948). Since they must be bargained for, it is not appro-

priate for one party to stop a pension program by unilateral action. *Hinson v. National Labor Relations Board*, 428 F.2d 133, 137 (8th Cir. 1970).

The facts of this case support and extend the application of the foregoing principles.

■ It is not unreasonable to conclude that the first participation agreement was still in existence during the hiatus between June 1, 1976 and April 1, 1977. The participation agreement, which is the underlying contract to pay money to the plaintiff, provides that it shall continue in existence during the life of the collective bargaining agreement and during renewals and extensions thereof. It also binds the parties to the terms of the trust. The trust provides an obligation to make payments while a collective bargaining agreement is being negotiated. It has a revealing sentence in it as the one limitation: "Contributions shall not be required in case of a strike after contract termination." In other words, the parties assumed that after termination of the collective bargaining agreement negotiations would continue for a new contract and the payments would continue during negotiations for a new contract unless a strike ensued.

The collective bargaining agreement itself has provisions in it to the effect that the contract shall continue after June 1, 1977 "from year to year" unless either party notified the other party of its intention to change or terminate the agreement. The notification given in this case specifically states that the union "desires to continue its existing agreement."

■ At no time did the employer take any affirmative action to notify the union that the contract was terminated. At all times after June 1, with the exception of the liability for pension fund payments, the employer continued to honor the contract between June 1 and April 1. The employer continued to honor the contract by checking off union dues as required and by making payments to the welfare fund as required. This action suggests that it should be estopped to deny that the collective bargaining agreement was terminated.

Finally, the Employee Retirement Income Security Act of 1974 (ERISA) suggests an additional reason why the employer should be required to make the payments to the pension fund. ERISA was intended to stabilize the rights and liabilities involved in pensions established by collective bargaining. Congress in its findings and declaration of policy provided:

> The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial . . . that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; that they have become an important factor in commerce because of the interstate character of their activities, and of the activities of their participants, and the employers, employee organizations, and other entities by which they are established or maintained . . . that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation and administration of such plans . . . that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries . . . that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

29 U.S.C. § 1001(a).

Stability and protection requires assurance of adequate funding and the prevention of arbitrary termination rights. ERISA protects employees' rights to pension funds under pension trusts if the employees qualify. 29 U.S.C. §§ 1052, 1053 and 1054. Whether payments to the trust have or have not been made by the employer is not relevant in the determination as to whether or not an employee qualifies. See Labor Department Advisory Opinion Letter on Delinquent Contributions dated August 31, 1976, Opinion 76–89, 221 BNA Pension Reporter R–24.

The plan in this case provides: "Any employment of an employee for which contributions to the pension fund are made or are required to be made on his behalf shall be considered covered employment." Central States Pension Plan, Article III, § 2(a).

A ruling by this court in an action between the employer and the fund could not adversely affect the rights of the employees to make claims against the fund when they became due, regardless of whether the employer has made payments or whether this court would have ordered the employer to make payments. It is not unlikely that they might prevail on the same theory that is being asserted in this case by the plaintiff.

A ruling adverse to the plaintiff in this court would place the plaintiff in an anomalous position. It would have no defense whatsoever to the claims being made by the employees. As a result of this decision, it would be required to meet the financial burden of ERISA's guarantees in the form of pension payments without corresponding contributions to the defendant's employees and similarly situated employees. As the plan covers several hundred thousand participants, with over 1400 contributing employers, the actuarial soundness of the fund would be compromised.

The clear language of the documents in this case that relate to the liability to make contributions, together with the actions of the employer that would have the tendency to estop the employer from denying the existence of an agreement, and the general thrust of the National Labor Relations' laws and ERISA, all suggest that the defendant is liable to the plaintiff for contri-

butions to the pension fund from June 1, 1976 to April 1, 1977.

Therefore, judgment should be entered in favor of the plaintiff on the liability aspect of this case. The parties are instructed to determine the amounts due under the March 15, 1976 participation agreement, as this agreement relates to the 1974 collective bargaining agreement entered into between the parties on March 15, 1976, from June 1, 1976 to April 1, 1977. If the parties agree, the amount due should be included in the judgment. If they cannot so agree, the matter should be set down for further hearing.

So ordered.