CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION AND HEALTH & WELFARE FUNDS, and John E. Dwyer, Plaintiffs,

v.

McNAMARA MOTOR EXPRESS, INC., a Michigan Corporation, Defendant.

No. K79-258 CA4.

United States District Court,
W. D. Michigan, S. D.

Oct. 29, 1980.

Russell N. Luplow, Charles J. Taunt, Bloomfield Hills, Mich., for plaintiffs.

Charles J. Daudert, Kalamazoo, Mich., for defendant.

## OPINION

DOUGLAS W. HILLMAN, District Judge.

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (hereinafter, "Pension Fund") and Central States, Southeast and Southwest Areas Health and Welfare Fund (hereinafter, "Health and Welfare Fund") are employee benefit plans headquartered in Chicago, Illinois. The funds were founded in 1955 pursuant to agreements and declarations of trust entered into between numerous Teamsters Union locals and various employers whose companies are engaged in the trucking industry.

Defendant, McNamara Motor Express, Inc., is a Michigan trucking corporation, which, pursuant to agreements with various Teamster locals, is obligated to contribute to the Pension and Health and Welfare Funds on behalf of its twelve employees. Since April, 1979, defendant's contributions to those funds have been sporadic, if not non–existent. Defendant's failure to pay results from its serious financial condition, which is due to the downturn in the automobile industry. Apparently, no payment has been made since February, 1980.

Plaintiffs have moved for a preliminary injunction seeking a court order requiring that defendant make current contributions to the funds. Plaintiffs have also moved for summary judgment as to the amount admitted by defendant to be due and owing to plaintiffs. For the reasons that follow, I grant both motions.

### MOTION FOR PRELIMINARY INJUNCTION

In evaluating the propriety of granting a preliminary injunction, the Sixth Circuit, in *Mason County Medical Association v. Knebel*, 563 F.2d 256 (1977), set out four factors which must be considered:

1. Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;
2. Whether the plaintiff has shown irreparable injury;
3. Whether the issuance of a preliminary injunction would cause substantial harm to others;
4. Whether the public interest would be served by issuing a preliminary injunction.

■ Reviewing the record as it relates to the above, I am convinced that plaintiffs have met their burden and that the requested preliminary injunction, therefore, ought to follow. In first considering the public interest in issuing injunctive relief, it is clear that, pending the outcome of this case, Congressional intent and employee welfare would best be advanced by requiring the defendant to make current contributions. Support for this conclusion is found in the legislative history of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA), governing the instant funds. As U. S. District Judge Charles Joiner stated in *Central States Southeast and Southwest Areas Pension Fund v. Hitchings Trucking, Inc.*, 472 F.Supp. 1243, 1247 (E.D.Mich.1979):

ERISA was intended to stabilize the rights and liabilities involved in pensions established by collective bargaining. Congress in its findings and declaration of policy provided:

The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial ... that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; that they have become an important factor in commerce because of the interstate character of their activities, and of the activities of their participants, and the employers, employee organizations, and other entities by which they are established or maintained ... that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation and administration of such plans ... that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries ... that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

29 U.S.C. § 1001(a).

Stability and protection requires assurance of adequate funding and the prevention of arbitrary termination rights. ERISA protects employees' rights to pension funds under pension trusts if the employees qualify. 29 U.S.C. §§ 1052, 1053 and 1054. Whether payments to the trust have or have not been made by the employer is not relevant in the determination as to whether or not an employee qualifies. See Labor Department Advisory Opinion Letter on Delinquent Contributions dated August 31, 1976, Opinion 76–89, 221 BNA Pension Reporter R–24.

The plan in this case provides: "Any employment of an employee for which contributions to the pension fund are made or are required to be made on his behalf shall be considered covered employment." Central States Pension Plan, Article III, § 2(a).

A ruling by this court in an action between the employer and the fund could not adversely affect the rights of the employees to make claims against the fund when they became due, regardless of whether the employer has made payments or whether this court would have ordered the employer to make payments. It is not unlikely that they might prevail on the same theory that is being asserted in this case by the plaintiff.

A ruling adverse to the plaintiff in this court would place the plaintiff in an anomalous position. It would have no defense whatsoever to the claims being made by the employees. As a result of this decision, it would be required to meet the financial burden of ERISA's guaran-

tees in the form of pension payments without corresponding contributions to the defendant's employees and similarly situated employees. As the plan covers several hundred thousand participants, with over 1400 contributing employers, the actuarial soundness of the fund would be compromised.

Moreover, while defendant alleges that it will be substantially harmed by issuance of an injunction, I am convinced that harm to plaintiffs, as set out above, is greater. Admittedly, defendant's precarious financial position is threatened by a court order requiring payment. However, concern over insolvency cannot be used by defendant to evade its responsibilities. Defendant has admitted its obligations under the funds. It would be improper for the court to defer enforcement of these obligations merely because defendant could go bankrupt. It is not the court's role to protect defendant from creditors "nipping at its heels". In granting preliminary relief, this court would simply be maintaining the status quo, one of Congress' primary purposes in enacting Rule 65 of the Federal Rules of Civil Procedure.

Finally, I am convinced that plaintiffs have shown a substantial probability of success on the merits. Again, defendant has admitted it is bound by the "Revised and Amended Trust Agreement for Central States, Southeast and Southwest Areas Pension Fund" and "Revised and Amended Trust Agreement for Central States, Southeast and Southwest Areas Health and Welfare Fund". Article III, Section 1 of those agreements reads:

"*Sec. 1. Amount of Contributions*—Each Employer shall make continuing and *prompt* payments to the Trust Fund as required by the applicable collective bargaining agreement between the parties." (Emphasis added.)

This clear statement, in connection with the funds' remaining contract language, undermines defendant's contention that the contract does not require "timely" payments, or that defendant's prior failure to make timely payments somehow amended the contract and limited plaintiffs' enforcement rights. While defendant later may in fact be able to prove a modification of its agreements with plaintiffs' funds, I believe that plaintiffs, at this stage, have successfully demonstrated a substantial likelihood that defendant is not currently meeting its existing obligations. Accordingly, for this reason, and because I am convinced that injunctive relief will protect the funds' actuarial soundness and its important public interests, I grant plaintiffs' motion for a preliminary injunction requiring that defendant immediately make contributions into the fund as they become due.

## MOTION FOR SUMMARY JUDGMENT

[2] Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiffs additionally move for summary judgment on amounts defendant admits are owed to the funds (viz., $112,800.00). Defendant does not oppose this motion, except insofar as plaintiffs seek a final, enforceable judgment for the amount acknowledged to be due. Defendant insists that because plaintiffs' motion is in reality one for partial summary judgment (in that plaintiffs contend defendant owes more than $112,800.00), under Rule 56 the court is not authorized to make an order granting plaintiffs' motion final or enforceable. Hence, defendant argues, while this court should grant plaintiffs' motion, it should not permit plaintiffs to enforce a judgment against it until the entire action is completed.

Rule 56 reads in part as follows:

(a) **For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross–claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

\*    \*    \*    \*    \*    \*

**(d) Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

This rule governs cases not fully adjudicated on motions, and provides that where judgment is not rendered on the entire case or for all of the relief requested, and that trial is necessary, the court shall ascertain which undisputed facts exist and which facts are controverted. The court shall then make an order specifying which facts are without controversy, deeming these facts as established, and then proceed to trial. The purpose of this rule is to establish plaintiffs' rights to an undisputed portion of amounts claimed, leaving the disputed balances of any such claims for trial. The order to be entered by the court is in the nature of a pre–trial adjudication, not a final judgment, not subject to appeal, and not enforceable by execution or otherwise at this stage of the proceedings. *See,* Wright and Miller, *Federal Practice and Procedure,* § 2737 (1973).

Plaintiffs contend, however, without citing a case in support, that Rule 56(d) does not preclude issuance of an enforceable partial judgment in cases such as this where defendant has admitted liability for at least part of plaintiffs' claim. I cannot accept this reading of Rule 56. The language in Rule 56(d) is clear and unequivocal. No authority is granted for issuing final, enforceable orders. This conclusion is buttressed by the Advisory Committee's notes to Rule 56, wherein it is stated:

The partial summary judgment is merely a pre–trial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trials wherein there is no genuine issue of fact."

Consequently, unless this is a case where defendant has admitted liability on a separate claim cognizable under Rule 54 of the Federal Rules of Civil Procedure (which it is not), plaintiffs' motion for an enforceable judgment is unsupportable.

Plaintiffs further contend that a final, enforceable order for (partial) summary judgment in the amount of $112,800.00 should issue due to Section 406(a)(1) of ERISA, 42 U.S.C. § 1106(a)(1), which reads in part:

"(a) Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

\*   \*   \*   \*   \*   \*

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan ..."

"Party in interest" is defined in Section 3(14), 42 U.S.C. § 1002(14), which reads in part:

"(14) The term 'party in interest' means, as to an employee benefit plan—

\*   \*   \*   \*   \*   \*

(C) an employer any of whose employees are covered by such plan ..."

Plaintiffs assert that defendant's retention of monies admittedly due and owing constitutes an impermissible "use of assets"

by a party in interest (i. e., extension of credit by plaintiffs to defendant). For this reason, plaintiffs argue that an enforceable order of partial summary judgment should issue in order to advance public policy interests contained in ERISA. I cannot agree.

Admittedly, plaintiffs correctly interpret Section 406 of ERISA in alleging that retention of monies by defendant is impermissible "use of assets". House Conference Report No. 93–1280 states, concerning unpermitted ERISA transactions:

> "Similarly, it is intended that it would be a prohibited transaction (in effect a loan by the plan to the employer) if the employer funds his contributions to the plan with his own debt obligations."

*See,* 1974 *U. S. Code Cong. & Admin. News.* p. 5088.

However, while plaintiffs may breach their fiduciary duties in knowingly failing to enforce employers' obligations to make contributions to these funds, no such breach exists where plaintiffs have timely brought suit, and, under the facts of this case, defendant is not preliminarily ordered to repay amounts admitted to be owing. This court is not authorized to grant the requested relief (viz., an enforceable partial summary judgment order). Consequently, failure to grant such relief due to the limitations of Rule 56 does not itself violate ERISA, and does not prejudice plaintiffs' positions as fiduciaries.

For this reason, and those discussed above, and pursuant to Rule 56(d), I grant plaintiffs' motion for partial summary judgment in the amount of $112,800.00. It is determined, for purposes of trial, that $32,858.00 is due and owing to the Health and Welfare Fund, and $79,942.00 is due and owing to the Pension Fund. However, this is not a final order, and it is not separately enforceable by plaintiffs.