BITUMINOUS COAL OPERATORS'
ASSOCIATION, INC., Plaintiff,

v.

Joseph P. CONNORS, Sr., et al.,
Defendants/Third–Party
Plaintiffs,

v.

ASSOCIATED ELECTRIC COOPERA-
TIVE, et al., Third–Party Defendants.

UNITED MINE WORKERS OF
AMERICA, et al., Plaintiffs,

v.

BITUMINOUS COAL OPERATORS'
ASSOCIATION, et al., Defendants.

Civ. A. Nos. 87–1205, 87–1238.

United States District Court,
District of Columbia.

July 7, 1987.

Gregory S. Lewis, Charles P. O'Connor,
Morgan, Lewis & Bockius, Washington,
D.C., for Bituminous Coal Operators' Asso-
ciation, Inc.

James J. Bierbower, Mark B. Bierbower,
Washington, D.C., for Joseph P. Connors,
Sr., Paul R. Dean, William B. Jordan, Wil-
liam Miller and Donald E. Pierce, Jr.

John R. Woodrum, Smith, Heenan & Al-
then, Washington, D.C., for Weirton Const.
Co., Pennweir Const., Spring Ridge Coal
Co. and Pittston Coal Group, Inc.

Paul Andrew Green, Hugh J. Beins,
Beins, Axelrod & Osborne, P.C., Michael H.
Holland, Earl V. Brown, Jr., United Mine
Workers of America, Washington, D.C., for
United Mine Workers of America.

John R. Mooney, Paul Andrew Green,
Hugh J. Beins, Beins, Axelrod & Osborne,
P.C., Michael H. Holland, Earl V. Brown,
Jr., United Mine Workers of America,
Washington, D.C., for William Hawkins, Jr.
and Joe J. Doman.

John M. Wood, Reed, Smith, Shaw &
McClay, Washington, D.C., for Associated
Elec. Co-op, Inc.

## MEMORANDUM

GESELL, District Judge.

Following oral argument on a variety of motions in these consolidated cases which involve efforts to enforce or resist payments to a pension trust as specified in identically worded collectively bargained agreements between the United Mine Workers of America ("Union") and various coal operators,[1] the Court, for reasons stated in a separate Memorandum and Order, has dismissed certain claims and has set other claims not yet ripe for scheduling at a July 30, 1987 scheduling conference.

This Memorandum addresses the merits of the only issue which is ripe for resolution pursuant to a motion for summary judgment, which has been fully briefed and argued. The Trustees as third-party plaintiffs in Civil Action No. 87–1205 seek to enforce the provisions of collective bargaining agreements against Weirton Construction Company, Pennweir Construction, Associated Electric Cooperative, Inc., and Spring Ridge Coal Company, Inc.,[2] signatory coal operators employers and third-party defendants. Each of these companies has separately refused to continue to pay their specified contribution to the 1950 Pension Trust fund according to the terms of the agreements, which continue to be in effect until January 31, 1988.

The separate but identical trust agreements between the Union and each of these companies, on which the Trustees rely, provide in the relevant portion of Article XX(d)(1), as follows:

> *During the life of this Agreement, for the periods of time indicated below,* each signatory Employer shall contribute ... the amounts specified below based on cents per ton ... of bituminous coal produced by each Employer....

(i) into the 1950 Pension Trust: *for the period beginning October 1, 1984, and ending when this agreement is terminated,* $1.11 per ton on each such ton. (ii) into the 1950 Benefit Trust: for the period beginning October 1, 1984, and ending September 5, 1986, 61.0¢ per ton on each such ton; and for the period beginning October 1, 1986, and ending when this Agreement is terminated, 64.-0¢ per ton on each such ton....

(emphasis added).

The coal employers named above contend that this provision, read in context, does not require further payments because the pension trust became fully funded before the term of the agreements has run its course. They seek to go behind the written words to inquire into the negotiating history of the quoted provision. In addition, one or more raise several specific objections, charging (1) that the Union fraudulently or negligently misrepresented that there was no possibility the trust could be fully funded by the conclusion of the agreements,[3] (2) that the Union has breached its agreements by excusing certain other coal operators subject to identical agreements from paying contributions in full,[4] and (3) suggesting that the provision was based on a mutual mistake of fact, namely that full funding would not be reached during the term of the agreements.[5]

The Court must grant summary judgment to the Trustees.

Section 515 of ERISA, 29 U.S.C. § 1145 (1982), precludes the first two defenses, which may only be asserted, if at all, against the Union. Section 515 states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent

---

1. This 1950 Pension Trust was created by the National Bituminous Coal Wage Agreement of 1974, negotiated by the Union and several dozen coal operators represented by the Bituminous Coal Operators' Association, Inc. The Court clearly has jurisdiction. The trust is subject to Section 302(c)(5) of the Labor–Management Relations Act, 29 U.S.C. § 186(c)(5) (1982), and ERISA, 29 U.S.C. §§ 1001–1461 (1982). The trust provides pension benefits to all coal miners who retired by January 1, 1976; a separate 1950 Benefit Trust provides health care benefits to these retirees.

2. Spring Ridge has not answered the third-party complaint or opposed the motion for summary judgment.

3. Pennweir and Weirton raise this only by answers.

4. Associated Electric raises this as Count II of its counterclaim against the Trustees.

  Another defense raised by Associated Electric is frivolous. It claims the contract is impracticable and against public policy due to a 1986 tax provision purportedly assessing a 10% tax on trust contributions made after full funding.

5. Pennweir, Weirton and Associated Electric each raise this in their third defense.

with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Congress added Section 515 to ERISA in 1980 to ensure quick and uncomplicated collection by trustees of trust contributions owed. It accomplished this by barring litigation against trustees of claims based on the conduct of the signatory parties and hence unrelated to a trust's entitlement. In this manner it fully endorsed the Supreme Court ruling in *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960).

■ The federal courts have held uniformly that claims of union improprieties in connection with collectively bargained trust fund agreements must be litigated as a separate matter in contract disputes against the union, and may not be raised as defenses against clear trust obligations. *See, e.g., Southwest Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773–75 (9th Cir.1986); *Washington Area Carpenters' Welfare Fund v. Overhead Door Co.*, 681 F.2d 1, 4–5 (D.C.Cir.1982); *Int'l Bhd. of Painters and Allied Trades Union v. Best Painting and Sandblasting Co.*, 621 F.Supp. 906, 907 (D.D.C.1985).

■ Thus, these two defenses are beside the point. They belong in another suit. The defense of mutual mistake of fact must also be rejected in this instance because the third-party defendants raising it have provided no evidence of mistake. The mistake is suggested to have occurred in 1984 negotiations between the Union and other coal operators represented at the collective bargaining table by the Bituminous Coal Operators' Association, Inc. None of the third-party defendants before the Court signed this particular Agreement. They were not at the negotiations and indicate they have no actual knowledge of what occurred. They signed identically worded, but independent, "me too" collective bargaining agreements. Having offered no proof of reliance on events occurring at the negotiating table, they are bound by the terms of the written agreements. Defendant coal signators suggest no basis for going behind the written words as to the meaning of these agreements in seeking permission to conduct Rule 56(f) discovery. Accordingly, the Court need only interpret the actual terms of the signed agreements.

■ The Trustees are correct. The wording of Article XX(d)(1) of the agreements is clear and unambiguous. The disputed provision, whether read singly or in context, requires the contribution of $1.11 per ton of coal mined to the pension trust until January 31, 1988. The provision standing alone is unambiguous. Other provisions indicating a concern with promoting tax deductibility of contributions and guaranteeing minimum funding of benefits, etc., do not override this clear provision. The further tautological argument that the agreements do not expressly mention whether contributions will continue past full funding only indicates that no exception was made to the plain meaning of the requirement that contribution continue until expiration of the agreements.

Since no material fact is in dispute, the Trustees are therefore entitled to summary judgment against each of the four third-party defendants and to dismissal of Count II of Associated Electric Cooperative, Inc.'s counterclaim against the Trustees which seek a judgment that it is not obligated to make further contributions to the pension trust. The parties are directed to present a form of order at the scheduling conference to this effect and which also assures return of any payments in the pension fund made by any of these employers after full funding, plus interest, in the event this determination is set aside or modified in any material respect on appeal.