**Joseph P. CONNORS, Sr., Donald E. Pierce, Jr., William Miller, William B. Jordan, and Paul R. Dean as Trustees of the United Mine Workers of America 1950 Pension Trust, 1950 Benefit Plan and Trust, 1974 Pension Trust, and the 1974 Benefit Plan and Trust, Plaintiffs,**

v.

**SHANNOPIN MINING COMPANY, a corporation, Defendant.**

Civ. A. No. 87–1780.

United States District Court, W.D. Pennsylvania.

Dec. 23, 1987.

Jack W. Plowman, Plowman and Spiegel, Pittsburgh, Pa., for plaintiffs.

William M. Wycoff, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

COHILL, Chief Judge.

Plaintiffs, Trustees of the United Mine Workers' Pension and Benefit Trusts ("UMW Trustees" and "UMW Trusts"), have requested preliminary and permanent injunctions against Defendant Shannopin Mining Company ("Shannopin"). We conducted a hearing on the preliminary injunction on December 11, 1987, at which time plaintiffs requested that we treat the hearing as a trial on the merits, as provided in Rule 65(a)(2) of the Federal Rules of Civil Procedure. We note at the outset that we decline to consolidate the preliminary injunction hearing with trial on the merits.

Defendant admits it has been delinquent in making the payments it owes to the UMW Trusts under the National Bituminous Coal Wage Agreement of 1984 ("NBCWA"). Plaintiffs submit that the amount of principal and interest owed as of December 11, 1987 is $2,337,859.16. Plaintiffs' calculation was offered into evidence at the preliminary injunction hearing, marked as Plaintiffs' Exhibit E. This exhibit was admitted subject to verification by defendant. As defendant has not entered any objection to plaintiffs' calculation of principal and interest owed, we find that the calculation is correct, and that defendant owed $2,337,859.16 to the UMW Trusts as of December 11, 1987.

Defendant apparently ceased making payments to the UMW Trusts sometime between January 1, 1986, and May 31, 1986. Complaint ¶ 7. Defendant has also failed to provide plaintiffs with monthly reports of coal produced and hours worked, as required by the NBCWA, although plaintiffs acknowledge that defendant has cooperated with plaintiffs' auditor by providing records to enable the auditor to calculate the amount of money owed to the UMW Trusts.

■ In order to issue a preliminary injunction, we must find that (1) plaintiffs are likely to eventually prevail on the merits; (2) irreparable injury will result to plaintiffs if the preliminary injunction is not issued; (3) the hardship imposed on plaintiffs if the preliminary injunction is denied outweighs the harm to the defendant if the preliminary injunction is granted; and (4) the public interest favors issuance of the preliminary injunction. *See, e.g., Sullivan v. City of Pittsburgh*, 811 F.2d

171, 181 (3d Cir.1987); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987).

Since defendant concedes that it has not satisfied its obligations to the UMW Trusts, it is likely that plaintiffs will eventually prevail on the merits.

An irreparable injury is one that is " 'of a peculiar nature, so that compensation in money alone cannot atone for it.' " *A.O. Smith Corp. v. Federal Trade Commission*, 530 F.2d 515, 525 (3d Cir.1976) (citing *Gause v. Perkins*, 3 Jones Eq. 177, 69 Am.Dec. 728 (1857)); *see also Dimond v. Retirement Plan for Employees of Michael Baker Corp.*, 582 F.Supp. 892, 899–900 (W.D.Pa.1983) (finding irreparable harm in purchase of thinly traded stock by employee retirement trust). Although arguably compensable by money damages, a lapse of payments into employee trust funds has been recognized as an irreparable injury in the courts of this circuit. The finding of irreparable harm is generally based on some specific factual finding of the consequences of the lapse in payment. In *United Steelworkers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273 (3d Cir.1979), the employer ceased making payments into a health and insurance benefits fund during a strike. The employees' insurance coverage would cease in 30 days unless they then converted to individual policies. The Third Circuit Court of Appeals found irreparable harm in the possibility that a worker, lacking funds to pay for an individual policy during the strike, would be denied adequate medical care. *Id.* at 1280. In other cases, preliminary injunctions have been based on similar findings. *See, e.g., Shultz v. Teledyne, Inc.*, 657 F.Supp. 289, 293 (W.D.Pa.1987) (imminent suspension of retirees' health insurance during strike by active employees).

Some courts demand a showing of a specific irreparable harm. A recent decision in the United States District Court for the Southern District of California held that a lapse in payments to union trust funds is not irreparable harm *per se,* and refused to grant a preliminary injunction absent specific evidence of irreparable harm in the record. *Sheet Metal Workers' International Association v. West Coast Sheet Metal Co.*, 660 F.Supp. 1500, 1507 (S.D.Cal. 1987). *See also Operating Engineers v. Joski Construction Co.*, 441 F.Supp. 849, 851 (E.D.Wis.1977) (preliminary injunction refused on grounds that plaintiffs failed to show irreparable harm as a result of lapse of payments into employee benefit plans).

However, Judge Weber of this court has held that a lapse of payments represents a significant harm in and of itself. As Judge Weber stated in *Combs v. Hawk Contracting, Inc.*, 543 F.Supp. 825, 829–30 (W.D.Pa. 1982):

> At the outset we feel that the denial of preliminary injunction would irreparably harm the plaintiffs and those individuals they represent. The Mine Worker Pension Funds are maintained exclusively through employer contributions. The continued integrity of these Funds is of vital importance to all union mine workers. Therefore, when an employer fails to make royalty payments, as required by contract, the interest of both the Trustees and the mine workers are imperiled.

There is no evidence in the record before us that benefits will soon cease as a result of Shannopin's lapse in payments. In fact, though Shannopin admits it has no bearing on its ultimate liability, Shannopin alleges that the UMW Trusts are overfunded. *See Bituminous Coal Operators' Association, Inc. v. Connors*, 676 F.Supp. 1 (D.D.C. 1987). Yet we are mindful of the UMW Trusts' argument that, if employers believe they can readily circumvent their obligations with pleas of financial hardship, there will soon be a crisis in funding. We tend to agree with Judge Weber that the uninterrupted funding of the UMW Trusts is of vital importance in and of itself, and that a lapse of payments may be significant enough to constitute irreparable harm.

In this case, there has been a very significant lapse in payments. Shannopin's debt to the UMW Trusts is accumulating at a startling rate. Shannopin is incurring an obligation which it will likely find very difficult to satisfy. Under the circumstanc-

es, we find irreparable harm may be caused to the UMW Trusts by Shannopin's continuing failure to fulfill its monthly obligations to the UMW Trusts.

This brings us to the third and fourth elements of the preliminary injunction analysis. We must weigh the relative harms caused by the grant or denial of a preliminary injunction, including the effect on the public interest. As Judge Weber aptly stated:

> [M]erely demonstrating a likelihood of success on the merits does not, by itself, justify the issuance of a preliminary injunction. We must also consider and weigh the relative harm suffered by the parties and the public as a consequence of any decision to grant or deny injunctive relief.

*Combs v. Hawk Contracting, Inc.,* 543 F.Supp. 825, 828 (W.D.Pa.1982). In the *Hawk* case, Judge Weber went on to find that:

> Finally we can see no prejudice to the defendant in this case if we grant plaintiffs' motion for preliminary injunction. Such an injunction would simply require that the defendant make payments into the Funds in accordance with what we understand to be the terms of the National Bituminous Coal Wage Agreement. Since the defendant is already obligated to make these payments, we see no prejudice resulting from the issuance of a preliminary injunction.

*Id.* at 830.

In this case, however, Shannopin may be severely prejudiced by a preliminary injunction granting the entire relief demanded by plaintiffs. Defendant's treasurer, Richard W. Reed, testified at the preliminary injunction hearing that defendant would be forced to cease operations if it had to satisfy immediately a judgment for the entire amount owing to the UMW Trusts. He also testified that, for the first time in three years, Shannopin would likely produce a profit in the current fiscal year. This testimony was not contradicted by plaintiffs. The hard consequences of a forced liquidation of Shannopin, particular-

ly when it may be on the verge of regaining some measure of financial health, gives us pause. The closing of defendant's business would not merely present a hardship to defendant, but would devastate the mine workers who are the ultimate beneficiaries of the UMW Trusts. We are well aware of the economic hardships visited on employees by the closing of plants and businesses in this part of the country. While there is a strong public interest in the continued integrity of employee pension funds, the public also has an interest in the continued employment of the mine workers who are the ultimate beneficiaries of the UMW Trusts. We doubt that the public interest would be best served by forcing Shannopin into liquidation if there is a reasonable possibility that the worst of its troubles are over.

In many of the published decisions granting preliminary injunctions, the employer's financial health was not a factor. Instead, the lapse of payments is frequently a result of some disagreement over the extent of the employer's obligation. *See, e.g., Schultz v. Teledyne, Inc.,* 657 F.Supp. 289 (W.D.Pa.1987) (employer disputed its obligation to pay retiree health insurance premiums during a strike); *Sheet Metal Workers' International Association v. West Coast Sheet Metal Co.,* 660 F.Supp. 1500 (S.D.Cal.1987) (employer disputed validity of new collective bargaining agreement imposed by National Joint Adjustment Board); *Combs v. Hawk Contracting, Inc.,* 543 F.Supp. 825 (W.D.Pa.1982) (employer argued that calculation of contributions to pension funds should be based on tonnage of clean coal, not including ash content); *Huge v. Long's Hauling Co.,* 442 F.Supp. 1041 (W.D.Pa.1977), *aff'd* 590 F.2d 457 (3d Cir.1978), *cert. denied* 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979) (employer argued that the union had committed unfair labor practices, and that the national labor agreement violated the Sherman Antitrust Act); *see also Vernau v. Bowen Enterprises, Inc.,* 648 F.Supp. 721 (W.D. Pa.1986) (summary judgment ordering employer to make contributions to pension

fund for hours paid as vacation time).[1] Here, Shannopin is not contesting its underlying obligation. Shannopin simply asserts that it cannot immediately satisfy its entire past-due obligations to the UMW Trusts.

■ There is some uncertainty as to the effect of defendant's financial plight. "Mere" financial hardship is not an adequate reason to deny, or stay, a preliminary injunction. *Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958). Yet the destruction of a business is more than "mere" financial hardship. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n. 2 (D.C.Cir.1977) ("The destruction of a business is, of course, an essentially economic injury. It is not, however, one of the 'mere' economic injuries which under *Virginia Petroleum Jobbers* are insufficient to warrant a stay.").

Courts are generally reluctant to defer relief on the grounds that it might bankrupt the defendant. In the words of one court:

> Admittedly, defendant's precarious financial position is threatened by a court order requiring payment. However, concern over insolvency cannot be used by defendant to evade its responsibilities. Defendant has admitted its obligations under the funds. It would be improper for the court to defer enforcement of these obligations merely because defendant could go bankrupt.

*Central States, Southeast and Southwest Areas Pension and Health & Welfare Funds v. McNamara Motor Express, Inc.*, 503 F.Supp. 96, 99 (W.D.Mich.1980). Similarly, in *Mamula v. Satralloy, Inc.*, 578 F.Supp. 563, 579 (S.D.Ohio 1983), the court held that a lapse in employee benefits was a greater harm than the employer's potential insolvency, and thus ordered the employer to provide the benefits due its employees.

Our view is that, if Shannopin cannot meet its current monthly obligations, then continued forbearance on the part of the UMW Trusts will not serve the public interest. As Shannopin's debt to the UMW Trusts continues to grow, the likelihood that Shannopin will eventually be able to retire the debt declines. There is no benefit to the public in permitting Shannopin's delinquent account to increase while forestalling an inevitable day of reckoning.

The balance of hardships also favors issuance of a preliminary injunction requiring Shannopin to meet its continuing monthly obligations: There is a greater harm to the UMW Trusts in permitting Shannopin's debt to continue to escalate, than the harm Shannopin might suffer in meeting its current monthly obligations. Mr. Reed testified at the preliminary injunction that Shannopin is meeting its obligations to its lenders, arguably at the expense of the UMW Trusts. Shannopin's obligation to the UMW Trusts is simply an unavoidable cost of business. Therefore, we will order Shannopin to file monthly statements and satisfy its current monthly obligations.

Similarly, the public interest and the balance of hardships weigh against the continued accumulation of interest. We will order Shannopin to make interest payments on the $2,337,859.16. The NBCWA does not prescribe an applicable interest rate. Therefore, 29 U.S.C. § 1132(g) provides that the interest rate is the rate prescribed under section 6621 of Title 26.

■ However, a preliminary injunction ordering Shannopin to bring its account

---

1. In their Brief in Support of Motion for Preliminary Injunction, plaintiffs also cited several unpublished decisions of this court, granting preliminary injunctions. Because of their age, the decisions are stored at the Federal Records Center Annex in Philadelphia, and are not readily available. Therefore, at our request, plaintiffs supplied copies of opinions and orders in *Mullins v. South Union Coal Co.*, Civil Action No. 78–1285G (W.D.Pa. Dec. 12, 1978) (Order granting preliminary injunction); *Huge v. Rumble*, Civil Action 76–959 (W.D.Pa. July 29, 1976) (Order granting preliminary injunction); *Huge v. Gysegem Enterprises, Inc.*, Civil Action No. 76–866 (W.D.Pa. July 13, 1976 & June 30, 1977) (Order granting preliminary injunction & Opinion and Order enforcing preliminary injunction). We have examined these opinions and orders; we have found nothing in them which would alter our analysis of this case.

current immediately could substantially harm the public interest, by forcing Shannopin into insolvency and eliminating the jobs of the ultimate beneficiaries of the UMW Trusts. The overriding purpose of a preliminary injunction is to preserve the status quo in anticipation of trial. Indeed, the *Central States* court, which issued a preliminary injunction despite defendant's precarious financial condition, only supplied limited injunctive relief, ordering the employer to "make contributions into the fund as they become due." 503 F.Supp. at 99 (the court simultaneously entered summary judgment against the employer for the amount of its past-due contributions).

We are unwilling at this time to issue a preliminary injunction which would effectively deal a death blow to Shannopin, because we are simply unconvinced that such an injunction would be in the public interest. In this case, the status quo is best preserved by requiring Shannopin to make current principal and interest payments, and provide monthly reports of coal production and labors' hours as provided by the NBCWA. Of course, remedies are available to the UMW Trusts in the event that Shannopin fails to comply with the terms of our order.

### ORDER

AND NOW, to wit, this 23rd day of December, 1987, for the reasons stated in the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that defendant Shannopin Mining Company ("Shannopin") be and hereby is ORDERED to:

(1) comply with those provisions of the National Bituminous Coal Wage Agreement which require the furnishing of monthly reports to the plaintiffs, Trustees of the United Mine Workers of America Benefit Plan and Pension Trusts ("UMW Trustees"), on or before the tenth day of the month, for coal produced, and hours worked by classified employees during the preceding month;

(2) comply with those provisions of the NBCWA with respect to royalties therein required in favor of the United Mine Workers of America Health & Retirement Trusts, commencing with payment of amounts due on January 10, 1988, and each month thereafter;

(3) remit the monthly interest due on the unpaid principal and interest due as of December 11, 1987 ($2,337,859.16), pursuant to 29 U.S.C. § 1132(g) and 26 U.S.C. § 6621, commencing with payment of interest due on January 10, 1988, and each month thereafter; and

(4) refrain from disposing of assets other than for a fair and adequate consideration and in the ordinary course of business until the final determination of this action or until otherwise ordered.

It is further ORDERED that the parties shall appear before the court for a Status Conference on July 19, 1988, at 9:00 a.m.