**INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL & ORNAMENTAL IRON WORKERS, LOCAL UNION NO. 103, AFL–CIO, et al., Plaintiffs-Appellees,**

v.

**HIGDON CONSTRUCTION COMPANY, INC., Defendant-Appellant.**

No. 82–2522.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1984.

Decided July 18, 1984.

Cecil Davenport, Louisville, Ky., for defendant-appellant.

Sydney L. Berger, Berger & Berger, Evansville, Ind., for plaintiffs-appellees.

Before ESCHBACH and POSNER, Circuit Judges, and MARSHALL, District Judge.*

ESCHBACH, Circuit Judge.

This action to recover unpaid wages and union health and pension plan contributions was brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, by Local 103 ("Union") and its affiliated pension and welfare plans against Gerald Higdon and his two companies, Higdon Construction Company ("Construction") and Higdon Contracting Company ("Contracting"). By consent of the parties, the case was referred to a magistrate, who found that the Union and Construction had entered a valid prehire agreement, authorized by § 8(f), of the National Labor Relations Act, 29 U.S.C. § 158(f), on July 31, 1973. The magistrate further found that the agreement had been repudiated by the employer on January 1, 1974. We are asked to decide whether the magistrate's determination of the date of the repudiation is clearly erroneous. Finding that it is not, we affirm.

## I.

In May 1973, Higdon Construction entered into a contract with the Glenmore Distillery for construction of a building. The contract provided that union labor would be used by Construction. Construction sought ironworkers from the union hiring hall, but was refused because it had

no contract with Local 103. Construction started the job without union labor, and Local 103 picketed the site. Subsequently, Construction entered into a prehire agreement with the Union, under which Construction agreed to accept the terms of the multiemployer contract between the Union and the Tri-State Iron Workers Employers Association. That contract in turn required Construction to pay union scale wages to all employees engaged in the Union's craft, and to make contributions to the various plans.

During the Glenmore job, Construction paid union scale and made plan contributions for those of its workers who had joined the Union or held union permits. It refused to make such payments or to follow the wage scale for those employees who did not join the Union. The Union never achieved majority status among Construction's employees.

During July 1973, Higdon formed Higdon Contracting for the express purpose of operating without union labor, and in January 1974, Contracting entered into a contract to construct a warehouse using its own nonunion labor. During the first week of work on the warehouse project, the Union's business agent, William Oglesby, contacted Contracting's general manager regarding the project, and was told that Contracting did not consider itself bound by the agreement between the Union and Construction. Gerald Higdon personally advised the Union in February that he no longer considered any of his companies bound by the agreement.

The magistrate found that:

The formation of Higdon Contracting Co., Inc., and the solicitation and acceptance of contracts by Contracting and the open refusal to seek union employees from the hiring hall, and the refusal to pay union scale wages and benefit payments proclaimed the intention of Higdon Construction not to be bound by the contract with Local 103 and worked a repu-

---

* The Honorable Prentice H. Marshall, District Judge for the Northern District of Illinois, sitting by designation.

diation of the contract. This repudiation was effective when first communicated to a representative of Local 103, Mr. Oglesby on January 1, 1974.

Accordingly, the magistrate awarded the difference between the wages actually paid to members of the Union's craft and those required by the agreement to the Union for the use and benefit of the affected employees. He also awarded the pension and benefit plans the amount that Construction should have contributed on those employees' behalf.

## II.

▮▮▮ Prehire agreements such as the one here, while valid under § 8(f), are voidable until the union reaches majority status. *NLRB v. Local 103, International Association of Bridge, Structural and Ornamental Iron Workers*, 434 U.S. 335, 345–46, 98 S.Ct. 651, 657–58, 54 L.Ed.2d 586 (1978). In the event the union never reaches majority status, the agreement remains binding until repudiated by either party. *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983). The primary issue contested below was whether the Union could enforce monetary obligations accruing under the agreement before its repudiation. The magistrate, correctly anticipating the Supreme Court's affirmative answer of that question in *McNeff, id.* 103 S.Ct. at 1759, held that it could.

▮▮▮ On appeal, Construction argues that the evidence shows that it repudiated the agreement much earlier than January 1, 1974. It claims that the contract was in fact repudiated when the Glenmore job ended on September 7, 1973. Before we analyze the evidence which appellant musters in support of its claim, we must first point out that once the existence of a valid prehire agreement has been established, the burden is logically upon the party claiming that the agreement has been repudiated to establish facts which support the repudiation. *See Painters District Council No. 3 Pension Fund v. Johnson*, 566 F.Supp. 592, 598 (W.D.Mo.1983); *Florida Marble Polishers Health and Welfare Trust Fund v. Megahee*, 102 L.R.R.M. 2740, 2741 (M.D.Fla.1982). The Court in *McNeff* did not determine what specific acts would affect the repudiation of a prehire agreement, 103 S.Ct. at 1759 n. 11. We agree with the magistrate's conclusion, however, that no repudiation could take place until the Union was informed in some manner that the employer no longer intended to be bound by the agreement.

Contracting was incorporated in July 1973; its first job, however, was not until January 1974. At that time, Contracting's business manager, Phillip Kelly, informed the Union's agent, William Oglesby, that Contracting was not bound by the agreement between Construction and the Union. Higdon testified that he told Oglesby at both the Grace job in January and the Barmet job in February that he would no longer recognize the agreement. The magistrate found that the repudiation became effective when the existence of Contracting and its purpose of operating nonunion were first communicated to the Union at the Grace job.

In support of its claim that the agreement was repudiated on September 7, 1973, the appellant points to the following testimony elicited from the Union's agent, Oglesby:

Q: Did [Construction] work on any other jobs other than the Glenmore job?

A: Yes, sir, they did.

Q: And they did not, on those job sites, *let's say the rest of the year, through December and ... through on up to January 1st of 1974*, did they use employees out of the hall?

A: No, sir.

Q: Were any inquiries made in that regard?

A: On some of this other work?

Q: Yes.

A: Yes, sir.

Q: And you were told, I presume, that he was not going to abide by the terms of the contract?

A: Some words similar, yes, sir.

R. 67, emphasis added.

Appellant also points to Higdon's testimony that after the Glenmore job was completed in September 1973, "Any approach [the Union] made to me concerning my work, I told them I wasn't going to use them. It's just that simple. I had people of my own." R. 79.

Contrary to appellant's claims, this testimony does not establish that the magistrate's findings about the date of repudiation are clearly erroneous. Oglesby's testimony indicates that the Union was told on some date up to and including the one found by the magistrate to be the date of repudiation that Construction would not "abide by the terms" of the agreement. However, Higdon had never complied completely with the terms of the agreement, even during the Glenmore job. The magistrate held that mere noncompliance was not enough to put the Union on notice that the agreement had been repudiated. Other courts which have considered the question agree. *Todd v. Jim McNeff, Inc.*, 667 F.2d 800, 804 (9th Cir.1982), *affirmed,* 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983); *Chicago District Council of Carpenters v. Yonan*, 553 F.Supp. 653, 657 (N.D.Ill.1982); *Chicago District Council of Carpenters Pension Fund v. Skrede*, 542 F.Supp. 634, 637 (N.D.Ill.1982). Oglesby's testimony does not establish that the agreement was repudiated at some date before January 1. Nor does Higdon's, for the testimony relied upon by appellant contains no date at all.

■ Appellant's other arguments are without merit. First, it claims that the Union could not recover unpaid wages for non-members who are "not a party to this action." It is clear, however, that the Union is entitled to enforce the agreement on behalf of all employees doing work covered by the contract. *Contractors, Laborers & Teamsters Health and Welfare Plan v. D.A. Construction Co., Inc.*, 725 F.2d 460, 461 (8th Cir.1984); *Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan v. Associated Wrecking Co.*, 638 F.2d 1128, 1133 (8th Cir.1981); *Chicago*

*District Council of Carpenters Pension Fund v. Skrede*, 542 F.Supp. 634, 637 (N.D. Ill.1982).

■ Next, the appellant claims that there was no legal authority for the award of interest on the unpaid wages and contributions. On the contrary, there is no authority for appellant's position, and none is cited. The award of prejudgment interest in a § 301 action is within the discretion of the trial judge. *See, e.g., Oil, Chemical & Atomic Workers International Union v. American Cyanamid Co.*, 546 F.2d 1144 (5th Cir.1977). The only basis the appellant states for its conclusion that the interest award in this case was an abuse of discretion is its belief that the Union was without authority to enforce the agreement for the benefit of nonunion employees. Since we have already stated our disagreement with that premise, it follows that we also disagree with the appellant's attack on the interest award.

Finally, the appellant attempts to raise several arguments before us based on the statute of limitations and the Union's alleged failure to resort to the grievance procedure which were not presented to the trial court. We will not entertain these arguments for the first time on appeal. *See Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1333 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977).

### III.

For the reasons stated above, the judgment of the magistrate is affirmed. Each party shall bear its own costs in this appeal.