SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL 206, OF the SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, AFL–CIO, Petitioner,

v.

WEST COAST SHEET METAL COMPANY, Respondent.

WEST COAST SHEET METAL, INC., Cross-Petitioner,

v.

SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL 206, OF the SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, AFL–CIO; Sheet Metal Workers' Health Plan of Southern California, Arizona and Nevada; Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada; Sheet Metal and Air Conditioning Apprenticeship and Journeyman Training Fund; Sheet Metal Workers' National Pension Fund; Sheet Metal Workers' National Training Fund; and Sheet Metal Workers' Trust Funds, Cross-Respondents.

The BOARD OF TRUSTEES OF the SHEET METAL WORKERS' PENSION PLAN OF SOUTHERN CALIFORNIA, ARIZONA AND NEVADA; the Board of Trustees of the Sheet Metal Workers' Health Plan of Southern California, Arizona and Nevada; and the Board of Trustees of the Sheet Metal Workers' National Pension Fund, Counterclaimants,

v.

WEST COAST SHEET METAL, INC., a California corporation, Counterdefendant.

National Labor Relations Board, Intervenor.

Civ. No. 86–1723–G(IEG).

United States District Court, S.D. California.

May 26, 1987.

**1502**

Richard D. Prochazka, San Diego, Cal., for petitioner Sheet Metal Workers' Int'l Ass'n.

J. Rod Betts, Gray, Cary, Ames & Frye, San Diego, Cal., for respondent West Coast Sheet Metal.

Kenneth J. Sackman, Gilbert & Sackman, Beverly Hills, Cal., for cross-respondents Sheet Metal Workers' Trust Funds.

Robert R. Petering, National Labor Relations Board, San Diego, Cal., for intervenor National Labor Relations Board.

ORDER DENYING COUNTERCLAIMANTS' MOTION FOR PRELIMINARY INJUNCTION AND GRANTING COUNTERDEFENDANT'S MOTION FOR A STAY OF FURTHER PROCEEDINGS

GILLIAM, District Judge.

This matter came on regularly for hearing before the Honorable Earl B. Gilliam on February 23, 1987, on counterclaimants' motion for a preliminary injunction and counterdefendant's motion for a stay of further proceedings. After considering all of the pleadings, points and authorities and other documents on file herein, and after having heard and considered oral argument and being fully advised as to all relevant issues, the court denies the counterclaimants' motion for a preliminary injunction. In addition, the court orders that all further proceedings in the counterclaim be stayed pending final resolution of the National Labor Relations Board ("NLRB") unfair labor practices complaint filed against Sheet Metal Workers' Local Union 206.

### PARTIES

The petitioner is Sheet Metal Workers' International Association, Local Union No. 206, of the Sheet Metal Workers' International Association, AFL–CIO ("Local 206"). Local 206 is the bargaining representative for the employees of respondent West Coast Sheet Metal Company ("West Coast"). The counterclaimants are The Board of Trustees of the Sheet Metal Workers Pension Plan of Southern California, Arizona and Nevada; the Board of Trustees of the Sheet Metal Workers' Health Plan of Southern California, Arizona and Nevada; and The Board of Trustees of the Sheet Metal Workers' National Pension Fund (collectively referred to as the "Trust Funds"). The Trust Funds administer contributions paid by West Coast pursuant to a collective bargaining agreement for the benefit of West Coast's employees.

### FACTS

In 1983, Local 206 and West Coast executed a collective bargaining agreement (the "Agreement"). The San Diego Chapter of a multiemployer bargaining unit known as the Sheet Metal and Air Conditioning Contractors National Association ("SD–SMACNA"), which is not a party to this lawsuit, represented West Coast in the negotiations. The Agreement contained three clauses that are now in dispute. First, the interest arbitration clause provided that any deadlock in contract renegotiations would be resolved through the National Joint Adjustment Board ("NJAB"). Second, the Agreement required West Coast to make monthly contributions to the Trust Funds according to a formula based on the number of hours worked by the employees of West Coast. Finally, the Agreement contained a "favored nation's clause", which allowed employers signatory to the Agreement to adopt "[a]ny Agreements entered into by Local 206 which are more favorable [to employers] than those included [in the Agreement]."

Before the Agreement was due to expire on June 30, 1986, SD–SMACNA invoked the favored nation's clause. SD–SMACNA claimed that Local 206 entered into other collective bargaining agreements that did not contain the interest arbitration clause, and notified Local 206 that the interest arbitration clause in the Agreement was no longer binding. West Coast then withdrew from SD–SMACNA, and entered into nego-

tiations on its own behalf with Local 206 for a successor agreement.

During the negotiations between Local 206 and West Coast, Local 206 concluded that the negotiations were deadlocked. Pursuant to the interest arbitration clause in the Agreement, Local 206 broke off the negotiations and sought to have the NJAB impose a new collective bargaining agreement on Local 206 and West Coast. Despite West Coast's challenge to the NJAB's jurisdiction, the NJAB decided that jurisdiction was proper and imposed a three-year standard agreement (the "New Agreement") on the parties. The New Agreement required, *inter alia*, continued contributions from West Coast to the Trust Funds and included a new interest arbitration clause. West Coast paid contributions to the Trust Funds through July 1, 1986, but refused to make contributions pursuant to the New Agreement.

Local 206 then filed a petition in this court to confirm the NJAB arbitration award. West Coast filed a crosspetition to vacate the NJAB award and a crosscomplaint against Local 206 and the Trust Funds for a declaratory determination of its rights and obligations under the New Agreement. The Trust Funds filed a counterclaim against West Coast for breach of contract, breach of trust agreement, and violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1145 (1985),[1] and requested a permanent injunction to compel future trust fund contributions.

After Local 206 petitioned to confirm the arbitration award, the NLRB filed a complaint against Local 206 alleging two violations of the National Labor Relations Act ("NLRA"). 29 U.S.C. § 158(b)(1)(B), (b)(3) (1973).[2] First, the NLRB claimed that Local 206 committed an unfair labor practice

by withdrawing from the bargaining table and turning to the processes of the NJAB to compel an agreement. Second, the NLRB alleged that Local 206 committed an unfair labor practice by bringing suit in this court to confirm the NJAB award.

On November 24, 1986, this court granted West Coast's motion to stay the petition of Local 206 to confirm the arbitration award pending resolution of the NLRB complaint against Local 206.

On March 10, 1987, the Administrative Law Judge ("ALJ") adjudicating the NLRB's complaint determined that Local 206 committed an unfair labor practice by insisting to impasse on nonmandatory subjects of bargaining in violation of the NLRA. As a remedy, the ALJ recommended that the NLRB order Local 206 to cease and desist from its unfair practices, and to bargain in good faith. The ALJ further recommended that Local 206 be required to dismiss its petition for confirmation of the NJAB award.

The Trust Funds now request a preliminary injunction requiring West Coast to make contributions to the Trust Funds, to furnish payroll remittance reports, and to provide mechanic's lien information. West Coast seeks a stay of the Trust Funds' counterclaim pending the resolution of the NLRB's complaint against Local 206.

## I. THE TRUST FUNDS' MOTION FOR A PRELIMINARY INJUNCTION

To determine whether a preliminary injunction should issue, this court must first decide whether to apply ERISA or the standards and procedures of the Norris-LaGuardia Act, 29 U.S.C. § 101–115 (1973). This court must then consider whether the

---

**1.** 29 U.S.C. § 1145 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement. Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1145 (1985).

**2.** 29 U.S.C. §§ 158(b)(1)(B), (b)(3) provide:

It shall be an unfair labor practice for a labor organization or its agents—
(1) to restrain or coerce ... (B) an employer in the selection of its representatives for the purposes of collective bargaining or the adjustment of grievances;
...
(3) to refuse to bargain collectively with an employer....

Trust Funds have made an adequate showing of an entitlement to injunctive relief.

**A. The Procedural Requirements of the Norris-LaGuardia Act Do Not Limit the Equitable Relief Available Under ERISA.**

At the outset, this court must resolve a dispute as to the proper authority for issuance of a preliminary injunction. West Coast argues that the Trust Funds' claim for injunctive relief must be evaluated under the Norris-LaGuardia Act. The Trust Funds urge the court to issue injunctive relief under ERISA according to traditional equitable principles. An examination of the purposes of and subsequent judicial gloss on these statutes reveals that the Trust Funds' position is correct.

Congress enacted the Norris-LaGuardia Act in 1932 to limit the availability of injunctive relief in conflicts arising out of labor disputes. Courts are powerless to issue injunctions in labor disputes except "in strict conformity with the provisions of [the Act]". 29 U.S.C. § 101. The Norris-LaGuardia Act enumerates specific conduct that courts cannot enjoin, and prescribes rigid procedural requirements for the issuance of injunctive relief in cases not involving such conduct.[3] Refusal to make trust fund contributions pursuant to a collective bargaining agreement does not fall within one of the categories of enumerated acts. *Mamula v. Satralloy, Inc.,* 578 F.Supp. 563, 574 (S.D.Ohio 1983).

ERISA, on the other hand, compels contributions from employers who are obligated to make payments to multiemployer plans. 29 U.S.C. § 1145. To that end, ERISA allows for civil enforcement of its provisions by "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief". 29 U.S.C. § 1132(a)(3). ERISA contains no specific procedures for the issuance of injunctive relief.

The problem facing the court is the apparent conflict between the Norris-LaGuardia Act and ERISA. In a technical sense, a request for an injunction to compel contributions pursuant to a collective bargaining agreement arises out of a labor dispute under the Norris-LaGuardia Act. The term "labor dispute" includes "any controversy concerning terms or conditions of employment," 29 U.S.C. § 113, and should be interpreted broadly. *Corporate Printing Co. v. New York Typographical Union,* 555 F.2d 18, 21 (2nd Cir.1977). Thus construed, the Norris-LaGuardia Act could foreclose the equitable relief available under ERISA.

The approach of courts in similar cases suggests that injunctive relief is available under ERISA without compliance with the procedural requirements of the Norris-LaGuardia Act. For example, the Sixth Circuit reversed the district court's denial of an injunction requiring future trust fund contributions without mentioning the Norris-LaGuardia Act procedures. *Laborers Fringe Benefit Funds—Detroit and Vicinity v. Northwest Concrete & Constr., Inc.,* 640 F.2d 1350, 1352 (6th Cir. 1981) (per curiam). Instead, the *Laborers Fringe* court focused on the need to provide adequate remedies under ERISA, noting that ERISA's purpose of stabilizing the rights and liabilities involved in benefit plans established under collective bargaining agreements would be frustrated unless the enforcement provisions of ERISA were liberally construed. *Id.* at 1352. *Accord, Mamula,* 578 F.Supp. at 576 (court ac-

---

**3.** Sections 7 and 9 of the Norris-LaGuardia Act establish the procedural requirements for the issuance of an injunction in a case growing out of a labor dispute. These requirements include the following:

1. A hearing in which witnesses testify in open court, including an opportunity for cross-examination;
2. Substantial and irreparable injuries;
3. A showing that the injury to the moving party from denial of relief is greater than the injury to the nonmoving party by granting the relief;
4. A finding of no adequate remedy at law;
5. The issuance of findings of fact by the court prior to granting the application for an injunction; and
6. Adequate security sufficient to recompense those enjoined for damages caused by the order.

29 U.S.C. §§ 107, 109 (1973).

knowledged tension between ERISA and the Norris-LaGuardia Act, but granted preliminary injunction requiring employer to continue trust fund contributions under traditional test for issuance of injunctive relief); *Van Drivers Union Local No. 392 v. Neal Moving & Storage,* 551 F.Supp. 429 (N.D.Ohio 1982) (preliminary injunction granted under ERISA without reference to the Norris-LaGuardia Act); *Combs v. Hawk Contracting, Inc.,* 543 F.Supp. 825 (W.D.Pa.1982) (preliminary injunction granted under ERISA without reference to the Norris-LaGuardia Act); *Operating Engineers Central Pension Fund v. Joski Constr. Co.,* 441 F.Supp. 849 (E.D.Wis. 1977) (denied preliminary injunction under ERISA without reference to the Norris-LaGuardia Act).

The legislative purposes underlying the Norris-LaGuardia Act and ERISA provide guidance for resolving the tension between the two statutes. Congress enacted the Norris-LaGuardia Act to protect the fledgling labor movement in the early part of the century from the formidable weapon of injunctive relief. *Boys Market, Inc. v. Retail Clerks Union, Inc.,* 398 U.S. 235, 250, 90 S.Ct. 1583, 1592, 26 L.Ed.2d 199 (1970).[4] The purpose of ERISA was to protect the interests of pension plan beneficiaries. *Laborers Fringe,* 640 F.2d at 1352.[5] Moreover, legislative committee reports reveal that ERISA was designed "to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of benefits due to participants." H.R. Rep. No. 93–533, 93rd Cong., 2d Sess. 17, *reprinted in* 1974 U.S.Code Cong. & Admin.News

4639, 4655. Thus, Congress was particularly concerned with providing adequate remedies under ERISA to aggrieved trust fund beneficiaries. Despite the absence of a specific statement in ERISA that the anti-injunction provisions of the Norris-LaGuardia Act do not apply to ERISA actions, the language and stated policy of ERISA reveal a congressional intent to allow courts to issue injunctions to compel trust fund contributions.

The legislative intent of both statutes would be served best by applying ERISA and the traditional test for injunctive relief in this case. The protection of a fledgling union, which is the goal of the Norris-LaGuardia Act, is clearly not an issue. Instead, the Trust Funds seek to protect the rights of the beneficiaries of the pension plans, a goal that is at the heart of ERISA. Under these circumstances, a statute enacted to limit the ability of management to restrain union activities should not frustrate the purpose of a statute enacted to protect the rights of trust fund beneficiaries. This court, therefore, will determine the propriety of injunctive relief according to the traditional criteria for injunctive relief rather than the more rigorous procedures and standards set forth in the Norris-LaGuardia Act.

B. The Trust Funds Have Not Established That a Preliminary Injunction Should Issue.

The traditional criteria for granting a preliminary injunction are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the movant, (3) a balance of hardships favoring the

---

**4.** The Norris-LaGuardia Act sets forth the public policy underlying the statute as follows:

Whereas under prevailing economic conditions ..., the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor ... it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference ... in the designation of such representatives. 29 U.S.C. § 102.

**5.** The Congressional findings and declaration of policy reveal that ERISA was adopted "to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b) (1985).

plaintiff, and (4) the advancement of the public interest. *Dollar Rent-a-Car of Washington, Inc. v. Travelers Indemnity Co.,* 774 F.2d 1371, 1374 (9th Cir.1985). The moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Id.* at 1374–75. These tests are not separate, but merely extremes of a single continuum on which the required showing of harm varies inversely with the required showing of meritoriousness. *San Diego Committee Against Registration and the Draft v. Grossmont Union High School Dist.,* 790 F.2d 1471, 1473 n. 3 (9th Cir. 1986) (quoting *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers,* 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979)).

Upon review of the record in this case, the court is persuaded that the Trust Funds have not established a probability of success on the merits, irreparable harm, or a favorable balance of hardships.

**1. Probable Success on the Merits.**

■ In order for the Trust Funds to demonstrate a likelihood of success on the merits of the counterclaim, the Trust Funds must show that the New Agreement will be enforceable. An employer is not obligated to make employee benefit contributions to a trust fund unless a binding collective bargaining agreement exists. *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 773 (9th Cir.1986) (union's fraud in the execution of collective bargaining agreement extinguishes employer's obligation to make trust fund contributions), *cert. denied,* —— U.S. ——, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). In an action to recover delinquent trust fund contributions, the Trust Funds are a third-party beneficiary of the collective bargaining agreement, and are subject to contract defenses that the employer could assert against the union. *Id.* at 773. Unless the NJAB decision imposes a binding collective bargaining agreement on Local 206 and

West Coast, West Coast will have no obligation to make contributions to the Trust Funds.

■ In this case, the ALJ recently determined that Local 206 committed unfair labor practices in violation of the NLRA by resorting to the NJAB and by attempting to confirm the New Agreement. 29 U.S.C. § 158(b)(1)(B), (b)(3). As a remedy, the ALJ recommended that Local 206 "cease and desist" from the unfair labor practices and seek dismissal of the petition to confirm the NJAB award. *See* Decision of Administrative Law Judge, Case 21–CB–9633, p. 7 (March 10, 1987).

The Trust Funds correctly argue that this court is not bound by the ALJ's decision under principles of *stare decisis. See Tri-State Building & Constr. Trades Council,* 257 N.L.R.B. 295, 297 (1981). Nevertheless, the ALJ opinion is sufficiently persuasive to suggest that the NLRB will probably decide that Local 206 committed an unfair labor practice. Industry fund contributions and interest arbitration clauses are nonmandatory subjects of bargaining. *NLRB v. Sheet Metal Workers Int'l Ass'n, Local 38,* 575 F.2d 394 (2nd Cir. 1978); *Detroit Resilient Floor Decorators Local Union No. 2265,* 136 N.L.R.B. 769, 771, 772 (1962), *enforced,* 317 F.2d 269 (6th Cir.1963). The ALJ found that Local 206 insisted to impasse on these nonmandatory subjects of bargaining, thereby committing an unfair labor practice. The ALJ believed that Local 206's tactics were calculated to force arbitration despite West Coast's lack of representation on the NJAB. Thus, the ALJ held, Local 206 coerced West Coast in the choice of a bargaining representative in violation of the NLRA. Given this persuasive reasoning, this court believes that the NLRB is likely to agree with the ALJ.

Should the NLRB adopt the ALJ's findings, this court would not confirm the NJAB award. It would contravene public policy to confirm an arbitrator's award enforcing a provision in a collective bargaining agreement violative of federal labor law. *Int'l Org. of Masters, Mates and Pilots v. Trinidad Corp.,* 803 F.2d 69, 72

(2nd Cir.1986) (reversing district court decision to enforce damages award for breach of collective bargaining agreement, compliance with which would cause employer to violate NLRA). Similarly, it would contravene public policy to enforce an arbitrator's award that was obtained through the use of unfair labor practices.

■ The Trust Funds nevertheless argue that the New Agreement could be enforceable if the offending provisions were removed. Indeed, the Supreme Court has recognized that legal provisions of a collective bargaining agreement may be severed from illegal provisions and enforced to avoid obliterating the entire collective bargaining agreement. *NLRB v. Rockaway News Supply Co.*, 345 U.S. 71, 78–79, 73 S.Ct. 519, 523–24, 97 L.Ed. 832 (1953).

The Trust Funds, however, overlook a key distinction between *Rockaway* and the instant case. The contract in *Rockaway* showed "respect for the law and not defiance of it", and there was no suggestion that the contract itself was obtained illegally. *Id.* at 78, 73 S.Ct. at 523. Here, the flaw in the New Agreement is not simply the inclusion of one clause that can easily be severed without destroying the integrity of an otherwise enforceable agreement. Instead, the very process by which the New Agreement was obtained was tainted because Local 206 illegally declared a deadlock and illegally resorted to the NJAB. Because the ALJ has determined that the New Agreement was illegally obtained, the Trust Funds are unlikely to prevail on the merits of their counterclaim.

2. Possibility of Irreparable Injury.

The exercise of equitable jurisdiction is predicated on the absence of an adequate remedy at law. *Regents of University of California v. ABC, Inc.*, 747 F.2d 511 (9th Cir.1984). A party is not entitled to a preliminary injunction unless he or she can demonstrate more than simply damages of a pecuniary nature. *Id.* at 519. As the Supreme Court recognized in *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* at 90 (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921 (D.C.Cir. 1958)).

■ The Trust Funds rely upon three district court decisions to argue that an interruption in trust fund contributions constitutes irreparable harm *per se*. *Mamula*, 578 F.Supp. at 576 (employer's admittedly precarious financial condition increased the likelihood of irreparable harm); *Combs*, 543 F.Supp. at 829 (trust fund maintained exclusively through employer contributions); *Van Drivers*, 551 F.Supp. at 433 (irreparable harm due to threat of missing insurance premium deadline and loss of investment opportunities). These cases do establish that irreparable harm may result from an interruption in trust fund contributions. But these cases stop far short of announcing a *per se* entitlement to injunctive relief. Instead, the district courts in *Mamula*, *Combs*, and *Van Drivers* identified the unique circumstances of each case that justified the conclusion that an interruption in contributions would cause irreparable harm. This court must decline the Trust Funds' invitation to adopt a *per se* rule. Instead, the Trust Funds must show that irreparable harm will ensue on the facts of this particular case.

■ An examination of the record in this case reveals no facts suggesting that the Trust Fund beneficiaries will suffer irreparable harm due to a temporary interruption in the contributions from West Coast. A finding of irreparable harm that is not based on factual allegations is speculative, and speculative injury does not constitute irreparable injury. *Goldie's Bookstore v. Superior Court of State of California*, 739 F.2d 466 (9th Cir.1984) (a finding that denial of injunction would result in lost goodwill and customers was improper if not based on factual allegations). Indeed, the Supreme Court in *Sampson* reversed the lower court's decision to grant an injunction in the absence of any affidavit from the plaintiff that touched on the con-

siderations relevant to irreparable harm. *Sampson,* 415 U.S. at 88, 94 S.Ct. at 952. *Accord, Joski Constr.,* 441 F. Supp. at 851 (preliminary injunction denied in the absence of proof of irreparable harm). This court cannot simply assume irreparable injury in the absence of proof, and this lack of proof is fatal to the Trust Funds' request for injunctive relief.

### 3. Balance of Hardships.

■ Assuming, *arguendo,* that serious questions are raised in this case, the Trust Funds have failed to establish that the balance of hardships tips sharply in their favor. As noted earlier, the record is devoid of evidence that the beneficiaries will suffer irreparable harm if the injunction is denied. The inquiry into the relative hardships on the parties necessarily touches upon the same considerations involved in deciding whether irreparable harm and a likelihood of success have been established. *Goldie's Bookstore,* 739 F.2d at 472 (weak constitutional claim, coupled with failure to prove irreparable harm, precluded district court from granting preliminary injunction). Given the Trust Funds' failure to establish either irreparable harm or a likelihood of success on the merits, the Trust Funds have not established that the possible financial burden on it sharply outweighs the injury to West Coast of adhering to an invalid collective bargaining agreement.

Given the lack of proof on the issue of irreparable injury and the lack of probability of success on the merits, the Trust Funds' request for a preliminary injunction should be denied.

## II. WEST COAST'S MOTION FOR A STAY OF COUNTERCLAIM

■ The district court and the NLRB share jurisdiction in certain collective bargaining disputes. Although the NLRB "is vested with primary jurisdiction to determine what is or is not an unfair labor practice," *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982), the NLRB shares with the district court "concurrent jurisdiction over cases legitimately involving both unfair labor practice charges and breach of collective bargaining agreement claims." *Central Valley Typographical Union, No. 46 v. McClatchy Newspapers,* 762 F.2d 741, 746 (9th Cir.1985) (quoting *Toyota Landscape Co., Inc. v. Building Material & Dump Truck Drivers Local 420,* 726 F.2d 525, 527 (9th Cir.), *cert. denied,* 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 49 (1984)). In cases in which the district court and the NLRB share concurrent jurisdiction, the district court may exercise its discretion and stay its own proceedings pending resolution of the NLRB dispute. *Northern California Dist. Council of Hod Carriers, Building and Constr. Laborers, AFL–CIO v. Opinski,* 673 F.2d 1074, 1075 (9th Cir. 1982).

The Ninth Circuit in *McClatchy* outlined the considerations that should guide the exercise of the district court's discretion. The district court should consider "whether the [ALJ'S] contractual interpretation was an essential part of its adjudicative process on a representational issue within the primary jurisdiction of the [NLRB]". *McClatchy,* 762 F.2d at 749. Furthermore, the district court should consider whether the decisions of the ALJ and the NJAB present more than a potential conflict, and whether an eventual NLRB decision will have issue preclusive effect. *Id.* at 750. If so, the district court should stay its proceedings.

In this case, the NLRB must decide whether Local 206 committed unfair labor practices by submitting the negotiations to the NJAB. In making that determination, the NLRB must interpret the interest arbitration clause and the favored nation's clause. The NLRB interpretation will involve more than a peripheral inquiry into these contract provisions; instead, the meaning of these provisions will be a central issue in deciding whether Local 206's actions were permissible under the Agreement. The interpretation of contractual provisions is a question of fact, *McClatchy,* 762 F.2d at 747, and a determination of fact by the NLRB will be accorded collateral estoppel effect if it is made in a proceeding

fully complying with procedural and substantive due process. *Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Distributors*, 689 F.2d 1339, 1341 (9th Cir.1982). Therefore, the NLRB proceedings necessarily involve its primary jurisdiction, and this court should give issue preclusive effect to the NLRB's resolution of any issues of fact, including its interpretation of the disputed provisions of the Agreement.

To proceed to the merits of the Trust Funds' counterclaim would risk conflict with the NLRB. The potential conflict between the NLRB proceedings and this case is quite real. If West Coast's motion for a stay of the counterclaim is denied, this court might award damages for breach of a collective bargaining agreement that the NLRB subsequently declares to be invalid. As the Second Circuit recently recognized, it would be inopportune to preempt the NLRB's primary jurisdiction and risk conflicting determinations by the district court and the NLRB on the lawfulness of the union's actions. *Trinidad*, 803 F.2d 69 (2nd Cir.1986) (directing district court to stay suit to confirm arbitration award pending resolution of NLRB unfair labor practices claim). This court will stay all further proceedings on the Trust Funds' counterclaim pending resolution of the NLRB complaint.

## CONCLUSION

In light of the Trust Funds' failure to satisfy the traditional criteria for injunctive relief, the Trust Funds' motion for a preliminary injunction should be denied. All further proceedings on the Trust Funds' counterclaim are stayed pending the resolution of the NLRB complaint against Local 206.

IT IS SO ORDERED.