870 F.2d 1214
 130 L.R.R.M. (BNA) 3011, 111 Lab.Cas. P 11,099,
10 Employee Benefits Ca 2281
 Frank GOULD, as Administrative Manager of the Central
Pension Fund of the International Union of Operating
Engineers and Participating Employers, R.A. Pinson, as
Administrative Manager of the International Union of
Operating Engineers, Local No. 841, Health and Welfare Fund,
Jerry Seager, as Director of the Operating Engineers Local
No. 103 Apprenticeship and Training Program, Plaintiffs-Appellees,
v.
LAMBERT EXCAVATING, INC., a corporation, Defendant-Appellant.
 No. 88-1674.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 7, 1988.
Decided March 9, 1989.
 
 1
 S. Douglas Trolson, Indianapolis, Ind., for defendant-appellant.
 
 
 2
 Frederick W. Dennerline, III, Fillenwarth Dennerline Groth & Baird, Indianapolis, Ind., for plaintiffs-appellees.
 
 
 3
 Before CUDAHY, RIPPLE, Circuit Judges, and WILL, Senior District Judge.*
 
 
 4
 WILL, Senior District Judge.
 
 
 5
 This is an appeal from the district court's order granting the plaintiffs' motion for a preliminary injunction and ordering the defendant to make delinquent and future contributions to certain employee benefit funds. We affirm the issuance of the preliminary injunction with one modification.
 
 Background
 
 6
 The plaintiffs brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1001, et seq., seeking, among other things, a preliminary injunction preventing Lambert Excavating, Inc. ("Lambert"), an Indiana corporation, from failing to make contributions to plaintiffs' employee benefit trust funds for prospective obligations pending a resolution of the underlying disputes. See 29 U.S.C. Secs. 1132, 1145. The plaintiffs are fiduciaries of the funds. They also seek damages for delinquent contributions, pre-judgment interest, liquidated damages, attorneys' fees and costs.
 
 
 7
 Lambert's alleged obligation is based on a collective bargaining agreement it executed with Local 103 of the International Union of Operating Engineers (the "Union") on March 15, 1985. The agreement is a construction industry "pre-hire" agreement covered by Section 8(f) of the Taft-Hartley Act, 29 U.S.C. Sec. 158(f). Under that provision, construction industry employers and unions may sign collective bargaining agreements even though the union may not represent a majority of the employer's employees. Such agreements may be repudiated at any time by either party before the union achieves representation of a majority of the employees. Jim McNeff, Inc. v. Todd, 461 U.S. 260, 265-66, 103 S.Ct. 1753, 1756-57, 75 L.Ed.2d 830 (1983); Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Local Union 103, AFL-CIO v. Higdon Constr. Co., Inc., 739 F.2d 280, 282 (7th Cir.1984).
 
 
 8
 However, a union may enforce an employer's pre-hire agreement obligations despite not representing a majority of the workers, so long as the contract has not been repudiated. McNeff, 461 U.S. at 269-71, 103 S.Ct. at 1758-59. In addition, if the agreement has not been repudiated, it becomes fully binding once the union achieves majority representation. Mesa Verde Constr. Co. v. N. Cal. Dist. Council of Laborers, 820 F.2d 1006, 1010 (9th Cir.1987). The contract here provides, among other things, that Lambert will make monthly contributions to the funds based on the number of hours worked by Union members. Plaintiffs' Exhibit 11, p 16; Exhibit 12, Article 41; Exhibit 13, p 56.[1] Not all contributions (allegedly owed) were paid, although some were.
 
 
 9
 Lambert contends that before March of 1985 it had not signed a contract with the Union since 1977 and had operated primarily as a non-Union contractor, although it had employed some members of the Union during that time. Don Lambert, President of the defendant-appellant, claims that when he signed the March 15, 1985 contract on behalf of the defendant he specifically told Leon Goodman and Leon Smith, the two Union representatives negotiating on behalf of the Union, that he intended to comply with the contract only on a single construction project for Eli Lilly and thereafter to resort to his "old ways," i.e., employing non-Union members. Negotiations for the March 15, 1985 contract occurred just after the Eli Lilly construction project began.
 
 
 10
 Goodman and Smith testified that they had no recollection of any oral limitation on the March 15, 1985 contract's scope. It is undisputed that the written contract does not contain any such limitation.[2] In addition, Mr. Lambert testified that he did not ask that such a limitation be placed in the contract. Deposition of Don Lambert at 30-31. Lambert's work on the Eli Lilly project lasted between two and three weeks.
 
 
 11
 The plaintiffs argue that Lambert has been a party to various collective bargaining agreements with the Union since 1966, including memorandum agreements and renewals thereof. These agreements allegedly affected wages, hours and working conditions. According to the Union, Lambert had been breaching these contracts in one way or another until 1985, when the breaches became more significant. Up until that time, Lambert and the Union were able to resolve their differences (e.g., projects were restaffed with Union members). The alleged breach in question relates to wages paid and contributions owed to the benefit funds. The only contract in issue is the one executed on March 15, 1985.
 
 
 12
 The plaintiffs also argue that Lambert never indicated that he intended to terminate the March 1985 contract almost immediately after its execution, i.e., after the Eli Lilly project. Moreover, Lambert has in fact made certain contributions to the Union pursuant to the contract in order to maintain several of his employees' eligibility for health benefits. Such payments have continued even after the hearing before the district court on the plaintiffs' motion for a preliminary injunction. In addition, Lambert has continued to acquiesce in the Union's demands to replace some non-Union members with Union members on non-Eli Lilly projects which he would not have to do if the contract had been repudiated.
 
 
 13
 A hearing on the plaintiffs' motion for a preliminary injunction was held on October 28, 1986. Lambert argued that the collective bargaining agreement was not enforceable prospectively because it was limited to one (completed) construction project and because the contract had been repudiated by Lambert. According to Lambert, the Union never achieved majority representation and Lambert had repudiated the contract. At the time of the Eli Lilly project, Lambert had approximately twelve to fifteen employees, five of whom were members of the Union. The present majority/minority status of the Union is not in issue on appeal.
 
 
 14
 After the presentation of evidence, the district court allowed the plaintiffs to take additional discovery and file a supplemental brief with respect to issues raised during the hearing which were not raised before. Subsequently, both parties took depositions (four in total) and filed additional briefs. On February 4, 1988, the district court ruled that the March 15, 1985 contract had not been repudiated and was enforceable prospectively. The district court issued an injunction requiring Lambert to pay delinquent contributions (since August 1986) and future contributions as they became due.
 
 Standard Of Review
 
 15
 ERISA provides for civil enforcement, including an injunction, of an employer's obligations to make contributions to pension plans. 29 U.S.C. Secs. 1132(a)(3), 1145. There are no specific procedures under ERISA, however, which cover the issuance of injunctions. Accordingly, the right to injunctive relief is determined based on traditional standards. Sheet Metal Workers' Intern. Ass'n, Local 206 v. West Coast Sheet Metal Co., 660 F.Supp. 1500, 1503-06 (S.D.Cal.1987); Van Drivers Union Local No. 392 v. Neal Moving & Storage, 551 F.Supp. 429, 431-33 (N.D. Ohio 1982); Combs v. Hawk Contracting, Inc., 543 F.Supp. 825, 827-28 (W.D.Pa.1982).
 
 
 16
 A preliminary injunction may be entered by a district court based on an analysis of the threat of irreparable harm to the moving party, the possible injury to the opposing party, the likelihood that the movant will succeed on the merits of its claim and public policy considerations. American Hospital Supply Corp. v. Hospital Products, Ltd., 780 F.2d 589, 593-94 (7th Cir.1986). Findings of fact with respect to these considerations are subject to the clearly erroneous standard. Fed.R.Civ.P. 52(a). The district court's balancing of factors and decision whether or not to grant a preliminary injunction is reviewed to see if the court abused its discretion. Chicago Board of Realtors, Inc. v. City of Chicago, 819 F.2d 732, 735 (7th Cir.1987); Dynamics Corp. of America v. CTS Corp., 805 F.2d 705, 709 (7th Cir.1986); Lawson Products, Inc. v. Avnet, Inc., 782 F.2d 1429, 1437 (7th Cir.1986) (balancing is given "substantial deference").
 
 Analysis
 
 17
 The district court's February 4, 1988 order granting the plaintiff's motion for a preliminary injunction included the following:
 
 
 18
 Defendant Lambert Excavating, Inc., its agent, servants, employees, and all persons in active counsel and in participation with it, are preliminarily enjoined from failing and/or refusing to make timely payment of monies due plaintiff Funds on behalf of all of defendant's employees for whom contributions are required under the aforementioned collective bargaining agreements, beginning with the contributions for the month of August, 1986. All future contributions will be paid on or before their due date.
 
 Findings of Fact
 
 19
 4. Defendant is bound by collective bargaining agreements with [the Union] under which it is required to make contributions to the plaintiffs for and on behalf of its employees covered by such agreement.
 
 
 20
 6. Defendant has failed to make contributions when they fall due.
 
 
 21
 7. The actuarial soundness of the plaintiff Funds is being jeopardized by defendant's failure to make its required contributions to the plaintiffs.
 
 
 22
 8. By virtue of the foregoing, the plaintiff Funds lack an adequate remedy at law and are likely to suffer irreparable injury.
 
 Conclusions of Law
 
 23
 5. In light of the Funds' status as employee benefit plans which provide benefits to employees of employers who were and are bound by the trust agreements establishing the Funds and to their dependents, the public interest is better served by the issuance of the injunction sought herein than by its denial.
 
 
 24
 As is clear from his written order, Judge Noland found that Lambert's failure to make contributions jeopardizes "the actuarial soundness of the plaintiff Funds ..." and that the funds were subject to irreparable harm. Findings of Fact 7, 8. Obviously, if a pension fund is making payments without receiving contributions its stability may be jeopardized. Robbins v. Lynch, 836 F.2d 330, 333 (7th Cir.1988). Cf. Sheet Metal, 660 F.Supp. at 1507 (failing to make contributions to employee trust funds does not constitute per se irreparable harm; the court must evaluate the particular facts of each case). Judge Noland also concluded that public policy warranted the issuance of an injunction, Conclusions of Law 5, and that the plaintiffs did not have an adequate remedy at law, Findings of Fact 8.
 
 
 25
 Lambert does not argue that the above findings are clearly erroneous. Instead, Lambert claims that its affirmative defenses were material issues to be resolved and that the district court did not make findings and conclusions with respect to them. In the alternative, Lambert contends that the district court's findings as to its affirmative defenses are clearly erroneous.
 
 
 26
 Lambert's affirmative defenses ultimately challenge the plaintiffs' likelihood of success on the merits of the case, one of the factors to be considered. The district court's order does not use the words "likelihood of success" among its many findings. A district court must make findings of fact with respect to material facts so that we can determine whether its findings of fact are clearly erroneous, even if there is evidence to support them. Monarch Beverage Co. v. Tyfield Importers, Inc., 823 F.2d 1187, 1192 (7th Cir.1987); Louis Vuitton, S.A. v. K-Econo Merchandise, 813 F.2d 133, 134-35 (7th Cir.1987).
 
 
 27
 We believe, however, that the district court's findings include in substance a finding that the plaintiffs will likely succeed on the merits. Following the October 1986 hearing, the district court allowed additional discovery pertaining to Lambert's affirmative defenses (that the contract was limited in scope and, in any event, repudiated) and the parties were permitted to file supplemental briefs. The district court made findings of fact which, for the purposes of the preliminary injunction, rejected Lambert's affirmative defenses. The district court found that the parties entered into a contract which is enforceable prospectively and under which Lambert is obligated to pay contributions which it has not paid. Findings of Fact 4, 6, Conclusions of Law 5. It is undisputed that the collective bargaining agreement contains no provision that it is limited to the Eli Lilly project. The district court implicitly rejected Mr. Lambert's claim that his alleged intent to limit the contract is binding. The district court's finding is supported by the undisputed facts and is not clearly erroneous. It amounts to a finding of probable success though not explicitly so stated.
 
 
 28
 Lambert contends that the testimony of Leon Smith corroborates its interpretation of the contract's duration. Smith testified that Lambert signed the contract to "do some work" and explained that "we didn't have an updated contract so he signed the contracts so he could actually have an updated contract to do that work." Lambert suggests that "some work" and "that work" refer only to the Eli Lilly project. Smith's testimony is equivocal and susceptible of several interpretations but not necessarily that the contract was to be limited to the Lilly project. In addition, if Lambert did not disclose his intent, and the Union claims he did not, the Union cannot be bound by it. Robbins v. Lynch, 836 F.2d at 332.
 
 
 29
 Moreover, the contract contains no such limitation. Whether or not Mr. Lambert can prove that his intent is binding, much less whether parole evidence is even admissible to interpret what appears to be an unambiguous contract, will be resolved later in hearings on a permanent injunction. The district court's findings of fact with respect to a motion for a preliminary injunction are not binding at trial or at a hearing for a permanent injunction. University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held"). Based on the undisputed facts and the testimony of Don Lambert and Leon Smith, the district court's finding that the contract was in effect and enforceable prospectively was not clearly erroneous and the court did not abuse its discretion.
 
 
 30
 Even if the contract is enforceable prospectively, Lambert would not be bound by it if it repudiated the agreement before the Union achieved majority status, a fact not in issue on appeal. An employer may repudiate a pre-hire contract by "inform[ing the Union] in some manner that the employer no longer intended to be bound by the agreement.... [M]ere noncompliance [is] not enough to put the Union on notice that the agreement ha[s] been repudiated." Higdon Constr., 739 F.2d at 282-83. See also Local Union 72 v. John Payne Co., 850 F.2d 1535, 1540 (11th Cir.1988) (an employer may effectively repudiate a pre-hire agreement by conduct which is " 'sufficiently bald and open' or 'open and notorious' so as to give the union notice of its intent to repudiate, ...") (citation omitted); Mesa Verde Constr., 820 F.2d at 1013.
 
 
 31
 Lambert contends that it repudiated the contract in the following ways: (1) Lambert refused to sign a contract prior to March 1985 and up to that time had not acquiesced in certain Union requests, namely Union security and wages; (2) Mr. Lambert expressed his intention to limit the scope of the agreement so that he could continue to operate as he had in the past; (3) at the time the contract in question was signed, the Union asked Lambert to try to get non-Union members to join the Union, Lambert did not succeed and the Union ceased its efforts; (4) the Union did not monitor Lambert's employees' pay to see if they were being paid in accordance with the contract; and (5) after the Lilly contract, Leon Smith discovered that a job on another project was not staffed by a Union member, Lambert indicated that he could not compete by paying Union wages and Smith did not follow through on his threats that he would do something about it. In addition, Lambert has asserted throughout the litigation that it had repudiated the contract.
 
 
 32
 None of the above alleged facts singly or collectively constitute an effective repudiation of the contract. The district court rejected Lambert's contention that the Union agreed to his intention to be bound by the contract for only one project, a contention inconsistent with the language of the contract. Any acts which occurred prior to the March 1985 contract are of course irrelevant as to Lambert's alleged subsequent repudiation. Some of Lambert's other allegations may establish a breach of contract by Lambert with the knowledge of the Union. A breach by Lambert does not, however, establish repudiation. Contractors, Laborers, Teamsters and Eng'rs Health and Welfare Plan v. Harkins Constr. and Equipment Co., 733 F.2d 1321, 1326 (8th Cir.1984); Local Union 72, 850 F.2d at 1540. Furthermore, whether or not the Union waived its right to sue for breach of the contract is not in issue.
 
 
 33
 Moreover, Lambert's actions at best have been ambiguous. Lambert maintains that it repudiated the contract while at the same time admitting that it continues to comply with certain provisions and to enjoy certain of the benefits of the contract. Its continued compliance with certain of the contract's provisions and its non-compliance with others does not add up to repudiation as of this date.
 
 
 34
 Lambert has selectively complied with its obligations under the contract when pressured by the Union to do so. For example, Lambert used non-Union employees and replaced them with Union members when the Union protested. In addition, Lambert has
 
 
 35
 continuously reported contributions to the Plaintiffs on behalf of certain of its Union member operating engineer employees, but only in the amount of hours sufficient to maintain such individuals' eligibility for health insurance benefits.... The Defendant continued to remit contributions on behalf of these individuals, on a limited basis, subsequent both to the completion of the Lilly project and to the hearing before the District Court on the Plaintiffs' Motion for Preliminary Injunction.
 
 
 36
 Brief for Plaintiffs-Appellees at 7.
 
 
 37
 If no contract is in effect, Lambert's action in paying contributions on behalf of some of its employees could constitute a violation of 29 U.S.C. Sec. 186(c)(5), which prohibits an employer from making contributions to trust funds established by a union in the absence of a written agreement between the employer and the union requiring such contributions. We need not address any potential liability under Sec. 186(c)(5) but simply recognize the inconsistencies in Lambert's position and find such inconsistencies to be further support for the district court's finding that Lambert has not repudiated and, therefore, is bound by the contract.
 
 
 38
 Lambert also contends that the district court's order is contrary to law in that it orders prospective compliance with the contract. According to Lambert, a pre-hire agreement can only be enforced retrospectively. Brief For Defendant-Appellant at 17 (citing Washington Area Carpenters' Welfare Fund v. Overhead Door Co. of Metropolitan Washington, 681 F.2d 1, 8 (D.C.Cir.1982)). Lambert's contention, emphasized at oral argument, bypasses the conclusion reached by the district court that the contract has not been repudiated as well as the principles enunciated in Washington Area Carpenters'. Enforceability depends on whether or not the pre-hire agreement has been repudiated unless it has become binding based on the union obtaining majority status prior to repudiation. The court in Washington Area Carpenters ' held that pre-hire agreements are enforceable "until the date when either party manifests its intent to void the agreement.... While the agreement remains in effect, however, it must be observed by the parties." 681 F.2d at 8. If a union has not yet obtained majority status, "the pre-hire agreement is not prospectively binding" but may be repudiated. Ibid. However, until the employer repudiates the contract, it is obligated to comply with payment obligations as they become due and the union may seek enforcement, even though it is not a majority representative.
 
 
 39
 If Lambert unequivocally announced its repudiation of the agreement before the Union obtained majority status, Lambert would not be bound prospectively by the contract. The district court's order states that "[a]ll future contributions will be paid on or before their due date." If Lambert effectively repudiates the contract, and the Union has not as of that date achieved majority status, then Lambert will not be bound under the contract to pay contributions which would otherwise accrue after that date. Accordingly, the district court's order must be modified to include the following italicized sentence:
 
 
 40
 All future contributions will be paid on or before their due date. Notwithstanding, if the contract is validly repudiated, no contributions for periods thereafter will be owed by Lambert.
 
 
 41
 The plaintiffs cite Deklewa v. Int'l Ass'n of Bridge Workers, Local 3, 282 N.L.R.B. No. 184, 1986-87 NLRB Dec. (CCH) p 18,549 (Feb. 20, 1987) as further support for their argument that the March 1985 contract has not been repudiated by Lambert. In Deklewa, the NLRB reinterpreted the pre-hire construction agreement exception to the Taft Hartley Act and held that "[n]either employers nor unions who are party to 8(f) agreements will be free unilaterally to repudiate such agreements." Instead, a pre-hire agreement will be enforceable until it expires by its terms or "the employees vote, in a Board-conducted election to reject (decertify) or change their bargaining representation." 1986-87 NLRB Dec. at 31,709.
 
 
 42
 Obviously, Deklewa limits the circumstances under which a pre-hire agreement may be repudiated. We have yet to adopt or reject the Deklewa test and decline to do so here. The issue was not raised before the district court and was noted only briefly in the parties' appellate briefs.[3] In any event, we find no repudiaion based on the pre-Deklewa standard.
 
 
 43
 Another factor that should have been considered by the district court is the threat of injury to Lambert. The district court's order reflects no findings or conclusions with respect to this factor. Lambert, however, does not contend on appeal that any threat of injury to it as a result of the injunction warrants a reversal of the district court's order. Accordingly, we decline to review this omission in the district court's order but reiterate the obvious need for district courts to articulate findings of fact on each material issue.
 
 
 44
 Finally, we note that the district court concluded as a matter of law that injunctive relief is available under ERISA without a showing of irreparable harm. Conclusions of Law 4 (citing Commodity Futures Trading Comm'n v. Hunt, 591 F.2d 1211 (7th Cir.1979) and United States v. Cappetto, 502 F.2d 1351 (7th Cir.1974), cert. denied, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975). We disagree.
 
 
 45
 In Cappetto, the United States brought an action under the civil remedies provisions of the Organized Crime Control Act of 1970, 18 U.S.C. Sec. 1964. A preliminary injunction against the defendants' illegal gambling activities entered by the district court was upheld on appeal. No showing of "irreparable harm" to the government was necessary under section 1964. 502 F.2d at 1358-59. Cappetto does not, however, support the conclusion that a private litigant may move for an injunction under ERISA without establishing irreparable harm.
 
 
 46
 The plaintiffs' case against Lambert here does not seek compliance with a statute per se but compliance with a pre-hire collective bargaining agreement. In addition, the suit, although brought pursuant to ERISA, is not brought by the government or a regulatory agency on the government's behalf. Moreover, we have either stated or implied that injunctions sought under ERISA are subject to the traditional equity analysis, including a finding of irreparable harm. See, e.g., Bugher v. Feightner, 722 F.2d 1356, 1361 (7th Cir.1983) (Wood, J., concurring); Donovan v. Robbins, 752 F.2d 1170, 1173 (7th Cir.1984). Likewise, several courts have held that private injunctions for enforcement of collective bargaining agreements under ERISA are subject to the traditional test. Operating Eng'rs Cent. Pension Fund v. Joski Constr. Co., 441 F.Supp. 849, 850 (E.D.Wis.1977) ("[s]ince Congress had not provided that a different standard shall apply, it is the Court's opinion that the usual standards for the granting of injunctive relief must be met"); Connors v. Shannopin Mining Co., 675 F.Supp. 986, 987-88 (W.D.Pa.1987); Sheet Metal Workers, 660 F.Supp. at 1503-06; Van Drivers, 551 F.Supp. at 431-33; Combs, 543 F.Supp. at 827-28; Huge v. Long's Hauling Co., 442 F.Supp. 1041, 1043 (W.D.Pa.1977), aff'd, 590 F.2d 457 (3d Cir.1978), cert. denied, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979).
 
 
 47
 Accordingly, we hold that where a private litigant seeks enforcement by a preliminary injunction of a pre-hire agreement governed by ERISA the district court's decision whether or not to issue an injunction must be based on the traditional analysis delineated above which includes a finding that the movant is subject to irreparable harm. In this connection, it should be noted that one of the expressed purposes of ERISA is to ensure the protection of millions of employees covered by pension plans: "Congress finds ... that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest...." 29 U.S.C. Sec. 1001(a). Accordingly, the probability of irreparable harm is strong, although the facts of each case may differ, and an injunction must be issued on a case-by-case basis.
 
 
 48
 The district court did find here that the plaintiffs would suffer "irreparable injury" in the event that no preliminary injunction was issued. Findings of Fact 8. The district court also found that the funds' "actuarial soundness ... is being jeopardized" by Lambert. Findings of Fact 7. Lambert does not dispute the district court's findings. Accordingly, the district court's error of law is inconsequential.
 
 Conclusion
 
 49
 The district court's findings of fact, while limited, address the concerns necessary to resolve the plaintiffs' motion for a preliminary injunction and to reject the defendant's affirmative defenses. The district court found that there is an enforceable contract and that Lambert is obligated to make contributions thereunder. Based on the undisputed fact that the contract is not by its terms limited in scope and the ambiguous nature of Lambert's alleged repudiation, the district court's findings of fact are not clearly erroneous.
 
 
 50
 The district court's other findings, namely that there is a threat of irreparable harm to the trust funds and that public policy considerations favor issuing an injunction, are not challenged by Lambert. Although the district court did not make findings concerning possible harm to Lambert as a result of the injunction, Lambert does not raise an issue with respect to that requirement. The district court also found that the plaintiffs would likely suffer irreparable injury and that finding is not challenged by the defendant. Finally, the district court's order was properly within its discretion.
 
 
 51
 The district court's order is modified to reflect that Lambert's obligation to pay prospective contributions is subject to its possible repudiation of the contract. So long as the Union does not enjoy majority status, Lambert remains free to repudiate the contract. If the contract is repudiated, subsequent obligations to pay contributions owed under the contract will no longer exist. The district court will still have to determine damages to date and whether or not to grant a permanent injunction. At that time, the questions of repudiation or majority representation can be resolved and the parties' rights and obligations determined accordingly.
 
 The order of the district court is
 
 52
 AFFIRMED.
 
 
 53
 RIPPLE, Circuit Judge, concurring in part and dissenting in part.
 
 
 54
 This case is here on preliminary injunction and I find the findings of fact and conclusions of law of the district court quite adequate to sustain its judgment. There is no reason at this point to modify that judgment. Finally, I emphasize that the court does not express agreement or disagreement with the position of the Third Circuit in International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 3 v. NLRB, 843 F.2d 770 (3d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988).
 
 
 
 *
 The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation
 
 
 [1]
 The March 1985 contract in issue was executed on March 15, 1985 and appears in the record as Plaintiffs' Exhibit 7. The agreement incorporates by reference three other agreements: Highway, Heavy and Railroad Construction Agreement (Plaintiffs' Exhibit 11); Building, Construction Agreement (Plaintiffs' Exhibit 12); and Utility Agreement (Plaintiffs' Exhibit 13). The March 15, 1985 contract specifically states that pension contributions are to commence on that date at the rate of $1.55 per hour based on "all time worked or paid for."
 
 
 [2]
 The three agreements incorporated by the March 1985 contract, see note 1 supra, have different expiration dates and provisions. The Highway, Heavy and Railroad Construction Agreement, Plaintiffs' Exhibit 11, is effective through March 31, 1987 and has no renewal provision. The Building, Construction Agreement, Plaintiffs' Exhibit 12, is effective through May 31, 1987 but has provisions for automatic yearly renewal periods. The Utility Agreement, Plaintiffs' Exhibit 13, is effective through March 31, 1987 but also has provisions for automatic yearly renewal periods. The March 15, 1985 contract's provision for expiration and/or renewal simply states "refer to memorandum agreements." There is an obvious conflict among the three agreements as to their expiration dates and renewal provisions. Clearly, however, there is no specific durational limitation which refers to Eli Lilly or any other project. Since it has not been raised on appeal, and apparently was not raised before the district court, we will assume that the renewal provisions of two of the incorporated agreements apply and the parties have been operating under those provisions
 
 
 [3]
 The plaintiffs' motion for a preliminary injunction was filed on August 26, 1986. Their brief in support of the motion was filed on October 12, 1986. Lambert filed a response on October 17, 1986. The hearing occurred on October 28, 1986. Supplemental briefs were filed by the plaintiffs on December 23, 1986 and by the defendant on January 8, 1987. In addition, on February 3, 1987 the plaintiffs filed notice of a then recent case dealing with the issue of whether Mr. Lambert's alleged intent to limit the contract's duration is binding. Deklewa was decided on February 20, 1987 and the district court's order was entered on February 4, 1988. Thus, it was not possible for the parties to raise the issues addressed in Deklewa in any of their filings or during the hearing. Apparently there was no request made by either party to bring the case to the district court's attention